643 So.2d 752 (1994)
Etta D. HAROLD,
v.
LA BELLE MAISON APARTMENTS.
No. 94-C-0889.
Supreme Court of Louisiana.
October 17, 1994.
Donald S. Klein, Klein & Klein, New Orleans, for applicant.
*753 Richard P. Ieyoub, John S. Coulter, Baton Rouge, Marilyn R. Cohen, New Orleans, for respondent.
MARCUS, Justice.[*]
Etta D. Harold filed this worker's compensation action against her employer, La Belle Maison Apartments, to recover disability benefits and medical expenses related to an anterior myocardial infarction (heart attack) she suffered while working. After a trial on the merits, the hearing officer denied compensation and dismissed plaintiff's claim with prejudice, finding that she failed to meet the burden of proof required of heart attack claimants as provided in the recently amended La.R.S. 23:1021(7)(e). Plaintiff appealed the dismissal, and the court of appeal affirmed.[1] Plaintiff then applied for a writ of certiorari from this court, which we granted.[2]
At the time she suffered her heart attack on August 28, 1991, Etta D. Harold was a 55 year old woman employed as a maintenance worker by La Belle Maison Apartments, a 220-unit two story apartment complex. Mrs. Harold had worked for La Belle for over 15 years, and eventually came to be the senior worker on a maintenance crew consisting of herself and from two to three other workers. Her employment duties included heavy physical labor, such as moving refrigerators, stoves and ovens into and out of apartments, including those located on the second floor of the complex. Sometimes other workers assisted her in moving this heavy equipment, and other times she had the assistance of only a dolly. She was also responsible for carpentry work, yard work, roof repair, painting, cleaning, and making general repairs.
Mrs. Harold was a dedicated employee who rarely, if ever, missed work. Alton Gasaway, the apartment manager and her direct supervisor, testified that she was a good and honest employee, and was not a complainer. Gasaway also stated that it was unusual for Harold to ever complain of feeling ill or being sick. In fact, she had suffered only one other work-related injury in over 15 years of employment, and made no claim for worker's compensation benefits related to that injury.
On the day of her heart attack, Harold arrived at work at her usual time of 7:15 a.m. and opened the shop and office. She spent the morning performing outdoor yard maintenance. She broke for lunch from noon until 1:00 p.m., then resumed her outdoor chores. Specifically, Harold used a shovel to remove grass from the cracks in the sidewalks. The evidence revealed that it was a very hot afternoon, and she exerted a great deal of energy to remove the grass from the sidewalks.
While performing these duties, at approximately 2:00 p.m., Mrs. Harold began to feel pain. According to her testimony, she stopped working and walked into the apartment building office. She saw no one upon entering and went into the bathroom to splash cold water on her face. Upon leaving the bathroom, as she was drying her face with a towel, she encountered Gasaway, the apartment manager, in the hallway. Harold testified that she told Gasaway that she had "severe pains in [her] chest and [her] back, and [she] thought [she] needed to go see a doctor." She stated that Gasaway's response was to give her a work order to repair a dishwasher and a toilet in an upstairs apartment in the complex.
Gasaway testified that he saw Harold come out of the bathroom, with her face wet and holding a towel. He denied, however, that Harold complained of chest pains, and said that she only complained of "feeling sick at [her] stomach." Gasaway admitted in his deposition that Harold looked like she was in "distress" when she walked out of the bathroom. However, at trial, he disputed this fact, but at the same time admitted that Harold told him "she was not feeling well," and that "she didn't look well...." The *754 bookkeeper, Collette Rosenbohm, who was sitting in the office near the hallway door, testified that she overheard Harold tell Gasaway that she did not feel well.
Gasaway testified that after Harold told him she was in pain, he instructed her to go sit in the air conditioned office. However, approximately ten or 15 minutes later, he instructed the security guard, Steve Turner, to take a work order back to Harold for her to "check into." After receiving the work order, Harold proceeded to the apartment to perform the repairs.[3] Turner accompanied Harold on the call. He drove her to the apartment in need of repair, and stayed with her while she performed the work. Harold testified that she was "really hurting" when she arrived at the apartment. She serviced the dishwasher, which required her to get down on her hands and knees, remove the bottom rack, and check the water bar. She then tested the dishwasher to see if it was working. She also repaired the toilet, which required her to lift the ceramic top off of the toilet, replace the flapper, and test it to ensure it was working. Turner testified that while on the repair call, Harold "complained of stomachaches, and then later she said her chest started hurting more."
After making the repairs, Harold asked Turner to take her to her apartment, which was located in the complex. Soon after arriving there, Harold collapsed to the floor. She was taken to the hospital, and arrived in the emergency room at 4:13 p.m., over two hours after she initially complained of pain to her supervisor. The doctors diagnosed her with an evolving anterolateral myocardial infarction. She required "thrombolytic therapy acutely and subsequently underwent cardiac catheterization documenting three vessel coronary artery disease." Harold underwent quadruple aortocoronary bypass surgery on August 30, 1991, which involved complications resulting in a lengthy hospital stay. Because of the extent of her injuries, Harold's physician, Dr. David W. Snyder, diagnosed her as totally and permanently disabled from any occupation requiring significant physical exertion.
The sole issue presented for our consideration is whether Etta D. Harold has met the burden of proof required of heart attack claimants seeking worker's compensation benefits as specified in La.R.S. 23:1021(7)(e).
The requirements for a successful claim for worker's compensation benefits are set forth in La.R.S. 23:1031 A, which provides:
If an employee not otherwise eliminated from the benefits of this Chapter receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated. (Emphasis added.)
Effective January 1, 1990, the legislature redefined these requirements with respect to heart-related and perivascular injuries by enacting La.R.S. 23:1021(7)(e), which provides:
Heart-related or perivascular injuries. A heart-related or perivascular injury, illness, or death shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence that:
(i) The physical work stress was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation, and

(ii) The physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of the heart-related or perivascular injury, illness, or death. (Emphasis added.)
This statute makes it more difficult for a claimant to prove that heart-related and perivascular injuries suffered on the job are compensable. Specifically, the amended statute changes the law in such cases in at least three respects. First, it heightens the burden of proof the claimant must show from a *755 preponderance of the evidence to clear and convincing evidence. Second, it changes the standard that the claimant's physical work stress must be compared to, requiring his or her physical work stress to be extraordinary and unusual when compared to the physical work stress of the average employee in that occupation. Third, it heightens the required causal link between that work stress and the heart injury by requiring the physical work stress to be the predominant and major cause of the heart-related or perivascular injury.
The task of interpreting this new statute has been before this court only once, in the case of Charles v. Travelers Ins. Co., 627 So.2d 1366 (La.1993). That case held that a cerebral vascular accident, commonly called a stroke, constitutes a "perivascular injury" as contemplated by La.R.S. 23:1021(7)(e). In the present case, the plaintiff suffered a large anterior myocardial infarction. In lay terms, this injury is known as a heart attack. A heart attack is clearly a heart-related injury. Therefore, worker's compensation claimants seeking benefits for employment-related heart attacks must meet the requirements provided in La.R.S. 23:1021(7)(e).
The first prong of the amended statute requires plaintiff to prove by clear and convincing evidence that the physical work stress she experienced was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation. La.R.S. 23:1021(7)(e)(i). "Extraordinary" is defined as "going beyond what is usual, regular, or customary." Webster's New Collegiate Dictionary (1977). "Unusual" is defined as "not usual" and "uncommon;" that is, not in accordance with usage, custom, or habit. Id. As is apparent from these definitions, the terms "extraordinary" and "unusual" have similar meanings. We hold that these terms require plaintiff to prove that her physical work stress went beyond what was usual, regular or customary in relation to the average employee in that occupation.
The evidence shows that Harold began feeling pain while knocking the grass out of the cracks in the sidewalk with a shovel. After the onset of her pain, she promptly stopped working and reported her pain to Gasaway, her supervisor, and also told him she thought she needed to see a doctor. Gasaway admitted that Harold did not look well when he saw her exit the bathroom, and that she told him she did not feel well. In fact, the bookkeeper heard Harold tell Gasaway she did not feel well. The security guard who drove Harold to the apartment needing repair also admitted that Harold told him she had stomach and chest pains. Gasaway's response was to give her a work order to repair a dishwasher and a toilet in an upstairs apartment less than 15 minutes later, without so much as checking to see if her condition had improved. Gasaway admitted that he did not tell Turner to ask Harold if she was feeling well before giving her the work order. To the contrary, he testified that he sent her the work order so she could "check into" it.[4]
Based on these facts, we find that Harold has proven by clear and convincing evidence that she experienced pain while performing strenuous work, stopped working, reported her pain to her supervisor, and was required to perform additional physical labor while in pain. As Dr. Snyder, Harold's cardiologist and the sole medical expert, who testified by deposition, stated:
I think somebody who's having chest pain, feeling poorly, getting down on their hands and knees, looking into a dishwasher, taking a top off a toilet and bending over, those things are stressful; climbing up the stairs to get to that apartment is stressful. I think all of those things are far worse for an evolving heart attack than being in medical care.
Being required to perform physical labor while in pain is not usual, regular, or customary *756 for maintenance workers, which was Mrs. Harold's occupation. Therefore, Harold has successfully proven that her physical work stress was extraordinary and unusual in comparison to that of the average employee in that occupation. La.R.S. 23:1021(7)(e)(i).
The second prong of the amended statute requires Harold to prove by clear and convincing evidence that her physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of her myocardial infarction. La.R.S. 23:1021(7)(e)(ii). Harold worked at a job requiring heavy physical labor for over 15 years, and never once experienced any symptoms of cardiac difficulties. In fact, she never missed work due to illness. Harold never before had pains in her chest; she never before had pains radiating down her arms; and she never before experienced shortness of breath. Furthermore, Harold was never before told by any physician that she had or potentially had cardiac problems. She was completely unaware that she had coronary artery disease, and did not discover this fact until she had a heart attack on the job.
Additionally, the evidence revealed that Harold did not possess many of the risk factors which contribute to the development of heart disease. Although she was a smoker with a family history of heart disease,[5] which are two risk factors, there are many other risk factors which are absent from this case.[6] There was no evidence that Harold suffered from high blood pressure, that she was obese, that she lacked regular exercise, that she suffered from anxiety or depression, or that she had diabetes. As Dr. Snyder stated:
[Harold] had never previously had any history of heart disease; she was a cigarette smoker; and there was a family history of heart disease; but she didn't have any other known risk factors for heart disease, and was on no medications whatsoever for her heart. So she hadn't had any warning symptoms up until the day of her heart attack.
Significantly to Harold's claim on causation, Dr. Snyder testified that the delay Harold experienced in receiving medical treatment combined with her continued work while in the onset of a heart attack exacerbated the injuries to her heart. There was a delay of over two hours between the time Harold initially reported her pain to Gasaway and the time she was admitted into the hospital emergency room. We find that this delay was caused by Gasaway's act of requiring Harold to perform additional physical labor after she reported she was in pain and needed a doctor.
Dr. Snyder testified that this delay, combined with continued physical labor, increased the damage to Harold's heart as well as the likelihood that she would experience complications, such as the left ventricular aneurysm she suffered. Dr. Snyder stated:
There is some evidence that people who remain active after the onset of a heart attack are more likely to experience mechanical complications, like aneurysms.
Also, and more importantly in this case, at least potentially, is the delay in obtaining medical therapy. If her artery had been opened within one, one and a half hours rather than the three hours it took in this particular instance, one would expect that she would have sustained less damage. (Emphasis added.)
In response to defense counsel's questioning regarding whether the delay in receiving medical treatment and the continuation of work after experiencing pain were significant factors, Dr. Snyder stated:
I think delay you can say unequivocally; no one would argue that point. It is also quite likely that continuing to work aggravated it. And in fact, one of the treatments *757 for limiting infarct size is to decrease the work load of the heart with medication. (Emphasis added.)
According to Dr. Snyder, had Harold stopped working and received medical treatment sooner, she would have sustained less damage to her heart. Clearly, the extraordinary physical work stress caused by being required to continue working while in pain combined with the delay in receiving medical treatment because of that continued work was the predominant cause of the severe damage to Harold's heart. While it is unclear at what point the physical work stress brought about the onset of her heart attack, we find that the delay combined with the continuation of work in pain was the predominant and major cause of Harold's heart-related injuries.
The defendant claims that Harold's claim must fail because Dr. Snyder stated that her heart attack "would have happened sooner or later anyway" (apparently because she had significant blockage in two major arteries as well as in side arteries), and that he could not definitively state why the heart attack happened when it happened. These factors are insufficient to defeat Harold's claim for worker's compensation benefits for several reasons. First, a heart attack claimant's case does not fail simply because the medical expert cannot definitively state what the primary cause of the heart attack was.[7] Second, the defendant's argument is essentially that, because Harold had a previously unknown but undoubtedly existent heart disease,[8] which prompted Dr. Snyder to conclude that her heart attack was inevitable, this condition must have been the primary cause of her heart attack, so she cannot recover. We disagree. In our opinion, the legislature did not intend this result when it inserted the term "preexisting" in La.R.S. 23:1021(7)(e)(ii). To deny recovery to all heart attack claimants who have existent but unknown coronary artery disease would basically mean that no heart attack claimants would recover. Allowing the discovery of occluded arteries after the fact of a heart attack to preclude recovery of worker's compensation benefits is an overbroad reading of the statute. We do not think the legislature intended to eliminate all individuals with coronary artery disease from coverage of the worker's compensation laws. Instead, it made such claims more difficult to prove by adding the heightened requirements of La. R.S. 23:1021(7)(e). Statutes must be construed in a manner to effectuate their purpose. Smith v. Cajun Insulation, Inc., 392 So.2d 398, 400 (La.1980). In addition, it is well settled that worker's compensation laws must be given a liberal interpretation. Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1006 (La.1989). Applying these principles, we hold that La.R.S. 23:1021(7)(e) must not be construed to preclude recovery of worker's compensation benefits simply because the claimant suffers from previously unknown but undoubtedly existent coronary artery disease. As long as such a claimant meets the heightened burden of proof imposed by the amended statute, he or she can recover. In the instant case, Harold has proven by clear and convincing evidence that the continuation of physical labor at the mandate of her employer after the onset of pain, combined with the resultant delay in receiving medical treatment, was the predominant and major cause of the severe damage to her heart.
In conclusion, we find that Mrs. Harold has met the burden of proof required of heart attack claimants under La.R.S. 23:1021(7)(e). Clearly, she has suffered a personal injury by accident arising out of and in the course of her employment. La.R.S. 23:1031 A. Therefore, she is entitled to worker's compensation benefits related to her injuries. The hearing officer was clearly wrong in holding otherwise. The court of appeal erred in affirming that judgment. Because the court of appeal found that plaintiff failed to meet the burden of proof required of heart attack claimants under La. R.S. 23:1021(7)(e), it did not determine the extent of plaintiff's disability or the amount *758 of compensation benefits due. We will therefore remand the case to the court of appeal to make these determinations and to enter an appropriate judgment.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed and set aside. The case is remanded to the court of appeal to determine the extent of plaintiff's disability and the amount of compensation benefits due, and to enter an appropriate judgment.
WILLIAM NORRIS, III, J. pro tem., concurs in the result.
NOTES
[*] Judge William Norris, III, Court of Appeal, Second Circuit, sitting by assignment in place of Justice James L. Dennis; Judge Felicia Toney Williams, Court of Appeal, Second Circuit, participating as Associate Justice Pro Tempore, effective September 1, 1994.

Watson, J., not on panel. Rule IV, Part 2, § 3.
[1] 93-867 (La.App. 5th Cir. 3/29/94); 636 So.2d 996.
[2] 94-0889 (La. 6/24/94); 640 So.2d 1320.
[3] There was evidence that the other two maintenance employees were working on other jobs at the time.
[4] Defendant makes much of Gasaway's claim that Harold only reported stomach pains, and not chest pains. We do not find this distinction significant. Stomach sickness is not an uncharacteristic symptom of myocardial infarctions. In fact, the commonly recognized heart attack symptom of pressure in the chest "may be accompanied by nausea and vomiting, sweating, and shortness of breath." Taber's Cyclopedic Medical Dictionary 1169-70 (1989).
[5] Harold testified that, prior to her heart attack, she smoked about one pack of cigarettes per day. She also stated that her father had suffered a heart attack and one of her six brothers had suffered a stroke. However, the record is devoid of any evidence regarding the causes of these events.
[6] See The Merck Manual 409 (16th ed. 1992) and Denis P. Juge & John H. Phillips, M.D., A New Standard for Cardiovascular Claims in Workers' Compensation, 43 La.L.Rev. 17, 19 (1982) for a discussion of the factors which increase the risk of heart disease.
[7] See Beaty v. Thiokol Corp., 414 So.2d 1292, 1297 & n. 3 (La.App. 2d Cir.), aff'd, 416 So.2d 114 (La.1982).
[8] Cardiac catheterization which plaintiff underwent in the emergency room revealed that she had three vessel coronary artery disease.