702 So.2d 845 (1997)
Gary C. DOWNS, Plaintiff-Appellee,
v.
J. & J. MAINTENANCE, INC., Defendant-Appellant.
No. 97-511.
Court of Appeal of Louisiana, Third Circuit.
October 8, 1997.
*846 John K. (Mike) Anderson, Leesville, for Gary C. Downs.
Patricia L. Barfield, Shreveport, for J. & J. Maintenance, Inc.
Before SAUNDERS, WOODARD and GREMILLION, JJ.
SAUNDERS, Judge.
In this workers' compensation dispute, the employer contests its having been found liable for workers' compensation death benefits. It complains that the workmens' compensation judge erred in finding its employee's survivors entitled to death benefits from a heart-attack. We affirm, finding no manifest error.

FACTS
The facts giving rise to the present dispute are essentially uncontradicted. Decedent, Gary C. Downs, was an employee of J. & J. Maintenance operating under the job classification of "plumber," when, on his first day of employment with the firm, he was felled by a heart attack toward the end of the work day. J. & J. was a contractor hired by the Department of Defense to perform work previously conducted by Defense employees, including Mr. Downs.
On the first day following the changeover to contract status, October 18, 1993, decedent Downs was instructed by J. & J. supply chief Mr. Ricky Martin to begin the day by making a supply list for "plumbers," with the assistance of a fellow "plumber," Ricky Conn, which they did most of the morning. After completing the supply lists that morning, these and other employees of J. & J. were directed to unload eighteen-wheel tractor-trailers that had arrived laden with quantities of material commensurate with J. & J.'s ambitious maintenance contract at Fort Polk.[1] These tasks were undertaken during a *847 two and one-half hour period of time during the afternoon of October 18, 1993, with temperatures in the high eighties. The crew rushed to accomplish these tasks before the close of business that day.
Decedent sought to accomplish his part of this mission without consuming any water or taking any breaks and succumbed to a heart attack or perivascular injury just as the job was winding down that afternoon. As a result of Mr. Downs' heart attack and resulting death, his survivors filed a claim with the Office of Workers' Compensation.
Trial was conducted on November 12, 1996, with the principal issue being (as now) whether decedent was felled by a compensable workplace accident in accordance with La.R.S. 23:1021(7)(e) pertinent to such claims. Following trial, judgment was rendered in favor of decedent's loved ones, including burial expenses of $5,880.15, medical expenses of $100.00, and legal interest from date of judicial demand and all costs.
From these findings, the employer appeals.[2]

La.R.S. 23:1021(7)(e)
The principal issue presented for our consideration is whether Mr. Gary Downs' survivors have sustained the burden of proving their entitlement to workers' compensation benefits in accordance with La.R.S. 23:1021(7)(e).
Effective January 1, 1990, the legislature redefined these requirements with respect to heart-related and perivascular injuries by enacting La.R.S. 23:1021(7)(e), which provides:
Heart-related or perivascular injuries. A heart-related or perivascular injury, illness, or death shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence that:
(i). The physical work stress was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation, and

(ii). The physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of the heart-related or perivascular injury, illness, or death. (Emphasis added.)
This statute makes it more difficult for a claimant to prove that heart-related and perivascular injuries suffered on the job are compensable. Specifically, the amended statute changes the law in such cases in at least three respects. First, it heightens the burden of proof the claimant must show from a preponderance of the evidence to clear and convincing evidence. Second, it changes the standard that the claimant's physical work stress must be compared to, requiring his or her physical work stress to be extraordinary and unusual when compared to the physical work stress of the average employee in that occupation. Third, it heightens the required causal link between that work stress and the heart injury by requiring the physical work stress to be the predominant and major cause of the heart-related or perivascular injury.
Harold v. La Belle Maison Apartments, 94-0889, pp. 4-5 (La.10/17/94); 643 So.2d 752, 754-55.
After reviewing the record evidence, we conclude that the workmens' compensation judge did not err in concluding that plaintiffs successfully established their entitlement to benefits for the death of Mr. Downs.
The first prong of the amended statute requires plaintiff to prove by clear and convincing evidence that the physical work stress she experienced was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation. La.R.S. *848 23:1021(7)(e)(I). "Extraordinary" is defined as "going beyond what is usual, regular, or customary." Webster's New Collegiate Dictionary (1977). "Unusual" is defined as "not usual" and "uncommon;" that is, not in accordance with usage, custom, or habit. Id. As is apparent from these definitions, the terms "extraordinary" and "unusual" have similar meanings. We hold that these terms require plaintiff to prove that her physical work stress went beyond what was usual, regular or customary in relation to the average employee in that occupation.
Harold, 94-0889, pp. 5-6; 643 So.2d at 755.
On appeal, defendant emphasizes the fact that claimant was a "plumber" during his Federal employment, but a "maintenance worker" in his new employment, implying that the work stresses he endured as a "maintenance worker" on October 18, 1993, were not extraordinary, regardless of whether the physical work stress was extraordinary in comparison to that of the usual plumber.
We find this argument without merit, for it is not the job title an employer assigns its employee's position that forms the basis of a claimant's occupation against which perivascular claims are to be measured under La. R.S. 23:1021(7), but the usual duties of the position to which he and his peers are assigned. Charles v. Travelers Ins. Co., 627 So.2d 1366 (La.1993).[3]
Against this proper standard, the evidence clearly supports the workmens' compensation judge's conclusion that claimant's survivors are entitled to benefits, for the evidenceincluding not insignificantly the testimony of several of decedent's co-workersshows overwhelmingly that the physical work to which decedent was assigned the afternoon of October 18, 1993, far exceeded the demands customarily and regularly placed upon plumbers, inasmuch as the magnitude of lifting, the infrequency of rest periods, and the extreme heat were exceptional, and placed decedent in a work environment which was far more demanding than that to which he was accustomed and also more demanding than that to which his co-workers were accustomed.
Therefore, after reviewing the factual record, we conclude that the workmens' compensation judge did not manifestly err in concluding that decedent's physical work stress was extraordinary and unusual in comparison to that of the average employee in that occupation. La.R.S. 23:1021(7)(e)(i).
We turn next to the question of causation, the final requirement imposed upon a claimant or his loved ones seeking to establish a compensable perivascular injury.
The second prong of the amended statute requires Harold to prove by clear and convincing evidence that her physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of her myocardial infarction. La.R.S. 23:1021(7)(e)(ii).
Harold, 94-0889, p. 7; 643 So.2d at 756.
Again, we can detect no manifest or clear error in the findings of the workmens' compensation judge that it was claimant's exertion and not some other source of stress or pre-existing condition that resulted in his heart attack and death. As the record shows, decedent had never before experienced any symptoms of a heart attack and possessed but one of the numerous risk factors associated with heart disease. Harold, 643 So.2d 752.

Medical Expenses
In its second assigned error, the employer maintains that claimant's survivors failed to establish their entitlement to medical expenses of $100.00. Citing Charles v. South Central Industries, 95-746 (La.App. 3 Cir. 12/6/95); 667 So.2d 1129, the employer maintains that a claimant is not entitled to recover medical expenses where he fails to offer proof to substantiate his claim. Because claimant's survivors failed to produce corroborating evidence of his medical expenses *849 at trial, appellant maintains that the workmens' compensation judge erred in awarding these benefits.
Defendant misconstrues the burden possessed by a claimant in establishing entitlement to medical expenses. Contrary to its assertions, such corroborating evidence, although always helpful, is not required to recover medical expenses except where specifically mandated by legislation, as in the claims of workers to recover for mental injuries caused by physical injury. See, e.g., La. R.S. 23:1201(7)(c) and (d), and Charles v. South Cent. Industries, 96-0883 (La.11/25/96); 683 So.2d 706, on other grounds reversing the Charles case cited by defendant.
Accordingly, defendant's second assignment of error is without merit.

Legal Interest
Finally, the employer complains of the legal interest awarded the heirs of Gary Downs. The workmens' compensation judge awarded interest from date of judicial demand. Citing La.R.S. 23:1201.3, as amended effective January 1, 1990, defendant contends that the interest should have run only from November 12, 1996, the date of trial and the workmens' compensation judge's verbal order. La.R.S. 23:1201.3 states in pertinent part that:
Any compensation awarded and all payments thereof directed to be made by order of the hearing officer shall bear judicial interest from the date ordered paid by the hearing officer until the date of satisfaction.
Added by Acts 1988, No. 938, § 2, eff. Jan. 1, 1990.
The question thus presented for our consideration is whether the highlighted statutory language mandates only post-judgment interest, as defendant contends. Ultimately, we conclude that it does not. While it is true, as the supreme court recently concluded in Sharbono v. Steve Lang & Son Loggers, 97-C-0110 (La.7/1/97); 696 So.2d 1382, that the statute's amended language permits only post-judgment interest on awards for penalties and attorney fees, it does not so clearly restrict interest on awards for wage and medical benefits.[4]Sharbono.
Traditionally, the "world of legal interest" has been "divided into two hemispheres," pre-judgment interest intended to compensate the victim for losses to which the victim has long been entitled "but does not enjoy because the defendant has maintained control over the funds during the pendency of the action," and post-judgment interest, intended to cover, inter alia, interest on penalties and attorney fees which are not fixed or due until judgment. Sharbono, 696 So.2d at 1386, n. 4.
In this case, the disputed interest (in contrast to those at issue in Sharbono) arises from the underlying compensation and not from penalties or attorney fees. Thus, but for the emphasized statutory language applicable to this workers' compensation dispute, we would readily conclude that the legal interest began to accrue on the date of demand.
Unlike awards of attorney's fees, underlying damages in, for example, actions ex delicto, are conceptually "due" throughout the pendency of the suit from the time the plaintiff makes judicial demand pursuant to R.S. 13:4203. That the precise "amount" due during that period is determined on the date of judgment has no effect on the simple fact that the defendant had the use of money to which the plaintiff was entitled since the time of judicial demand. So, too, with actions ex contractu under C.C. art.1989, damages are conceptually "due" from the date of an active breach, or from the date the defendant is put in default in the case of a passive breach. The later determination of the actual "amount" due relates back to that earlier date to allow for precise calculation of the amount of interest actually due to make the plaintiff whole. In other words, *850 in cases ex delicto and ex contractu, "prejudgment interest" is awarded to make an injured party whole by compensating that party for the time-value of money to which that party was entitled from the date set by the legislature, but over which the defendant, in retrospect, had wrongfully continued to exercise dominion and control while the suit was pending.
Sharbono, 696 So.2d at 1388.
However, in this case, our premature reversion to the normal practice for assessing pre-judgment interest on compensation benefits would require that we ignore the explicit language of La.R.S. 23:1201.3, that judgments in workers' compensation proceedings "shall bear judicial interest from the date ordered paid by the hearing officer." This, we cannot do. "R.S. 23:1201.3 was enacted as part of Acts 1988, No. 938, a sweeping bill aimed at reforming worker's compensation law, in particular, the administration of claims." Sharbono, 696 So.2d at 1385. Moreover, as the supreme court observed in Sharbono, unambiguous language contained in legislation cannot be ignored, but rather must be applied as written. See also La.R.S. 1:4, to the same effect. Consequently, the question deserves further analysis.
Legislative intent is the fundamental question in all cases of statutory interpretation, and rules of statutory construction are designed to ascertain and enforce the intent of the statute. The rules of statutory construction applicable in this case are those pertinent to conflicting legislative acts and to repeal by implication.
The legislative branch is presumed to intend to achieve a consistent body of law. 1A N. Singer, Sutherland Statutory Construction Sec. 23.09 (Sands 4th ed. 1986). When a legislature enacts a statute without mention of existing statutes on the same subject matter, the later act may, by necessary implication, effect the repeal of the preexisting law. However, there is a presumption against implied repeal, based on the theory that the legislature envisions the whole body of law when it enacts new legislation. Id. at Sec. 23.10. Thus, a court should give harmonious effect to all acts on a subject when reasonably possible. However, when two acts are clearly irreconcilable, are clearly repugnant as to essential matters relating to the acts, and are so inconsistent that the two cannot have concurrent operation, then the presumption against implied repeal falls, and the later statute governs. Id.

State v. Piazza, 596 So.2d 817, 819 (La.1992).
The Code of Civil Procedure addresses the issue of interest awards in general terms only. C.C.P. art.1921 provides: "The court shall award interest in the judgment as prayed for or as provided by law." The official revision comment following Article 1921 indicates that the phrase "as provided by law" is aimed at the exception in the case of tort claims where interest attaches automatically from the date of judicial demand without being prayed for, under La.R.S. 13:4203. See Mini Togs Products, Inc. v. Wallace, 513 So.2d 867, 871 (La.App. 2d Cir.1987), writ denied, 515 So.2d 451 (La.11/30/87).
Sharbono, 696 So.2d at 1386, n. 4.
Here, it would seem that the law summons us to apply La.Code Civ.P. art.1921 and the 1988 amendment to La.R.S. 23:1201.3 in pari materia. Doing so, we conclude that La.R.S. 23:1201.3, as amended, was intended to offer the workmens' compensation judge considerable latitude in determining when, in an ultimately meritorious case for compensation benefits, legal interest is to commence. Simply speaking, judicial interests on compensation benefits is due from the date the workmens' compensation judge in her discretion orders it to be due. We believe this construction is supported by the usual rationale for awarding pre-judgment interest without running afoul of the intentions of the legislature in amending La.R.S. 23:1201.3.[5]

DECREE
In light of the foregoing, the judgment of the workmens' compensation judge is affirmed. *851 All costs of these proceedings assessed to defendant, J. & J. Maintenance, Inc.
AFFIRMED.
NOTES
[1] J. & J. employees had to unload some 3,000 gallons of paint contained in five gallon buckets, forty to sixty air conditioning Freon cans, each weighing approximately thirty pounds, and a like number of air conditioning compressors.
[2] The workmens' compensation judge denied attorney fees and penalties. This issue is not before us on appeal.
[3] "Plaintiff's duties mainly included raking the asphalt and smoothing it into place, although he also assisted in shoveling the asphalt from the delivery trucks." Charles, 627 So.2d at 1368 (Emphasis ours).
[4] In fact, given the opportunity to express an opinion on the issue in Sharbono v. Steve Lang & Son Loggers, the supreme court expressly declined to do so. Thus, notwithstanding our earlier pronouncement in Miller v. Roger Miller Sand, Inc., 95-1253 (La.App. 3 Cir. 3/13/96); 676 So.2d 1084, the question remains ours to decide.
[5] This interpretation further offers the possibility of interest from date of pronouncement without regard to those myriad cases in which the workmens' compensation judge calls upon either litigant to draft the judgment.