TERRI F. LOVE, Judge.
I iThe plaintiff suffered a stroke while working with the underage drinking task-force and made a claim for workers’ compensation, which was disputed. The City of New Orleans filed a Motion for Summary Judgment, which was granted and the plaintiffs claims were dismissed with prejudice. We find that' the workers’ compensation court weighed the credibility of the plaintiffs evidence and erroneously granted the Motion for Summary Judgment because genuine issues of material fact exist. Therefore, we reverse and remand for proceedings.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Michael Marziale, a sergeant with the New Orleans Police Department (“NOPD”), was working as a supervisor with the Underage Drinking Taskforce (“Taskforce”) when the Taskforce conducted an investigation at The Boot, a bar in New Orleans. After approaching a suspected underage drinker, the female suspect ran away from Sergeant Marziale whereupon he gave chase for approximately fifteen to twenty feet. The female suspect then attempted to strike Sergeant Marziale, but he avoided contact. After arresting the female suspect, Sergeant Marziale allegedly began to “experience pains on the left side of his body.” However, Sergeant Marziale continued to participate in similar investigations on Bourbon Street until his condition required transportation to an emergency room. | ¡¿Thereafter, Sergeant Marziale was diagnosed as having suffered a stroke, which resulted in partial paralysis of the left side *1154 of his body.[1] Sergeant Marziale’s injuries were preliminarily classified compensable as workers’ compensation.
However, the City of New Orleans’ (“City”) third-party administrator for workers’ compensation claims, Cannon Cochran Management Services, Inc. (“CCMSI”) determined that Sergeant Marziale’s injuries were not covered by workers’ compensation. Sergeant Marz-iale then filed a Disputed Claim for Compensation. Approximately seven months after Sergeant Marziale filed his claim, the City filed a Motion for Summary Judgment, which the workers’ compensation judge granted. Sergeant Marziale then filed a Motion for a New Trial, which was denied. His timely appeal follows.

STANDARD OF REVIEW

“Ordinarily, in workers’ compensation cases, the appropriate standard of review to be applied by the appellate court to the OWC’s findings of fact is the ‘manifest error-clearly wrong’ standard.” Steinfelds v. Villarubia, 10-0975, p. 3 (La.App. 4 Cir. 12/15/10), 53 So.3d 1275, 1278, quoting Dean v. Southmark Constr., 03-1051, p. 7 (La.7/6/04), 879 So.2d 112, 117. However, when the issues raised on appeal are from a summary judgment proceeding, appellate courts examine the granting of a motion for summary judgment using the same criteria as the trial court with a de novo review. Weintraub v. State Farm Fire & Cas. Co., 08-0351, p. 2 (La.App. 4 Cir. 10/29/08), 996 So.2d 1195, 1196. Summary judgment “shall be rendered ... if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for Lpurposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B)(2).[2] The mover bears the burden of proof. La. C.C.P. art. 966(C)(2). “However, if the movant will not bear the burden of proof at trial on the matter,” then the mover does not have “negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense.” La. C.C.P. art. 966(C)(2). “Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.” La. C.C.P. art. 966(C)(2).
“Summary judgments are favored.” Kimpton Hotel & Rest. Grp., Inc. v. Liberty Mut. Fire Ins. Co., 07-1118; 07-1209; 07-1310, p. 3 (La.App. 4 Cir. 12/19/07), 974 So.2d 72, 75. However, “[i]n determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony or weigh evidence.” Suire v. Lafayette City-Parish Consol. Gov’t, 04-1459; 04-1460; 04-1466; p. 11 (La.4/12/05), 907 So.2d 37, 48. A fact is genuine and material if it “would matter at a trial on the merits.” Id. “Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of trial on the merits.” Id.

SUMMARY JUDGMENT

Sergeant Marziale contends that the workers’ compensation judge erroneously granted the City’s Motion for Summary Judgment because he was | .¡entitled to *1155 workers’ compensation benefits based on his stroke.
“In reviewing workers’ compensation cases a court should construe the Louisiana Workers’ Compensation Act with an end to including a worker within its ambit of protection.” Steinfelds, 10-0975, p. 4, 53 So.3d at 1279. “[I]t is well settled that worker’s compensation laws must be given a liberal interpretation.” Harold v. La Belle Maison Apartments, 94-0889, p. 10 (La.10/17/94), 643 So.2d 752, 757. La. R.S. 23:1021(e) provides that “[h]eart-related or perivascular injuries:”
shall not be considered a personal injury by accident arising out of and in the course of employment and is not com-pensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence that:
(i) The physical work stress was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation, and
(ii) The physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of the heart-related or perivascular injury, illness, or death.
“The first prong ... requires plaintiff to prove by clear and convincing evidence that the physical work stress she experienced was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation.” Harold, 94-0889, p. 5, 643 So.2d at 755. “ ‘Extraordinary’ is defined as ‘going beyond what is usual, regular, or customary.’ ” Id., quoting Webster’s New Collegiate Dictionary (1977). “ ‘Unusual’ is defined as ‘not usual’ and ‘uncommon;’ that is, not in accordance with usage, custom, or habit.” Id. “This is a question of fact that is determined by whether a reasonable person of usual sensibilities would find the stress ‘extraordinary.’ ” Lloyd v. Shady Lake Nursing Home, Inc., 47,025, p. 12 (La.App. 2 Cir. 5/9/12), 92 So.3d 560, 568, quoting Gooden v. B E & K Const., 33,457, pp. 4-5 (La.App. 2 Cir. 6/23/00), 764 So.2d 1206, 1209. “The second prong ... requires” the plaintiff “to prove by clear and convincing evidence that her physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of her” heart-related or perivascular injury. Harold, 94-0889, p. 7, 643 So.2d at 756.
Sergeant Marziale testified in his deposition that he served as the “supervisor and as a [sic] officer conducting an investigation” during the investigation at The Boot. He participated in the Task-force for “several months” and questioned “hundreds” of people prior to his stroke. Sergeant Marziale stated that his responsibilities on the scene of Taskforce investigations was to “[s]upervise” his “people.” During the Taskforce investigations, Sergeant Marziale testified that he and other NOPD officers would identify themselves and ask to view a suspect’s identification. During his time as a Supervisor of the Taskforce, Sergeant Marziale did not “personally” encounter an armed suspect.
The night Sergeant Marziale suffered a stroke, two female suspects attempted to run away from him. Sergeant Marziale stated that people “often” start running when he attempts to question them. One female suspect ran fifteen to twenty feet before Sergeant Marziale stopped her. The second female suspect “walked very hurriedly” for “[l]ess than 10 feet.” One of the female suspects “took a swing” at Sergeant Marziale, but she did not strike him. She struggled with Sergeant Marziale and he “had a hold of her.” Sergeant Marziale testified that “[h]er resisting caused my injury, caused the stroke.” He further *1156 stated that no one ever informed him that he had hypertension or high blood pressure. Sergeant Marziale responded affirmatively when asked if it was a “usual” occurrence to have to try and stop someone from fleeing.
| r,Sergeant Marziale’s affidavit submitted in opposition to the City’s Motion for Summary Judgment provides the following sworn statement: “I have handled a number of underage drinking investigations but the large majority of my duties as an officer in the NOPD, approximately 97% to 98%, are sedentary.” Sergeant Marziale also swore that the female suspect “tried to evade” him “and ran from” him “for 15-20 feet, wrestled with” him, “and attempted to strike” him. Further, he alleges that “[a]s a result of that accident at ‘The Boot,’ I suffered a stroke.” Lastly, Sergeant Marziale stated that “[t]he deposition of Dr. Donald Adams who relates my stroke to the incident at ‘The Boot’ has been continued on a number of occasions by the City of New Orleans.”
We find that the workers’ compensation judge made a credibility determination of Sergeant Marziale’s testimony by granting the City’s Motion for Summary Judgment. Sergeant Marziale testified that it was “usual” for suspects to attempt and flee, but he did not testify that chasing the female suspect and engaging in a struggle with the suspect was “usual.” Whether Sergeant Marziale’s work the night he suffered the stroke was extraordinary, unusual, or beyond what was customary is a question of fact. See Lloyd, 47,025, p. 12, 92 So.3d at 568. Also, Sergeant Marziale testified that he never suffered from high blood pressure.
The City contends that Rucker v. Temps Today, Inc., 09-1257, pp. 4-5 (La.App. 4 Cir. 5/5/10), 38 So.3d 1018, 1020 and Howard v. Callahan, 396 So.2d 607, 608 (La.App. 1st Cir.1981) support their assertion that Dr. Adams’ deposition, allegedly delayed by the City, is irrelevant because Sergeant Marziale had sufficient time to conduct discovery. However, Sergeant Marziale’s case was pending for approximately eight months; whereas, in Rucker and Howard, approximately two years elapsed between the filing of the original suit and the shearing on the motion for summary judgment. Id. Additionally, most workers’ compensation cases cited by the City are procedurally distinguishable in that the matters were addressed after a full hearing on the merits.
Accordingly, under the facts and circumstances of the case sub judice, resolving any doubt in favor of Sergeant Marziale, and resolving doubt in favor of the coverage of workers’ compensation, we find that the workers’ compensation judge erroneously granted the City’s Motion for Summary Judgment because genuine issues of material fact exist as to whether Sergeant Marziale’s actions were “usual” and whether the stroke was caused by those actions. Therefore, we reverse and remand for further proceedings.

DECREE

For the above-mentioned reasons, we find that the workers’ compensation court erroneously weighed the credibility of Sergeant Marziale’s deposition and that genuine issues of material fact exist. Therefore, we reverse and remand for further proceedings.
REVERSED AND REMANDED

. Sergeant Marziale returned to work for the NOPD on desk duty approximately one year after suffering his stroke.

. La. C.C.P. art. 966(B)(2) was recently amended by the Louisiana Legislature to include the words "admitted for purposes of the motion for summary judgment.”