ROBERT M. MURPHY, Judge.
| -¡Claimant-appellant, Donald Gordon, Jr., appeals the January 16, 2013 judgment of the Office of Workers’ Compensation, District 7, (“OWC”) dismissing his claims with prejudice. For the reasons that follow, we reverse the judgment of the workers’ compensation court and remand the matter for an award of indemnity and medical benefits.
*549 FACTS AND PROCEDURAL HISTORY
Mr. Gordon, a 36-year-old boilermaker, was employed by defendant-appellee, Turner Industries Group, LLC (“Turner” or “defendant”) at a refinery in Belle Chasse, Louisiana. On November 19, 2010, claimant began experiencing arm, neck and whole body pain while operating a forklift at work. The pain caused him to lie down on the ground and eventually rendered him unable to speak or walk. Claimant was taken to the nurse’s station at defendant’s refinery, where he was diagnosed with food poisoning. Claimant declined defendant’s offer to transport him to another medical facility and accepted a ride home from his foreman, Earl Danos. After resting at his home for almost two days without improvement, claimant went to the emergency room on November 21, 2010, where he was diagnosed as having suffered a stroke. Dr. John Lawrence Freiberg, Jr., a | ¡¡neurologist, evaluated claimant on his second day in the hospital. In connection with claimant’s stroke, Dr. Freiberg conducted several tests, including a cerebral angiogram, which confirmed that claimant sustained a dissection, or tear, of his right vertebral artery. As a result of his stroke, claimant suffers from vision problems that inhibit his ability to focus properly when reading, and he can no longer write with his right hand.
On April 11, 2011, Mr. Gordon filed a Disputed Claim for Compensation Form seeking indemnity and medical benefits in connection with the stroke he suffered within the course of his employment. On May 6, 2011, Turner answered Mr. Gordon’s complaint, denying that Mr. Gordon suffered a compensable vascular injury during the course of his employment with Turner. The case proceeded to trial on December 6, 2011. At the time of trial, claimant had not received any compensation or medical benefits from defendant.
At trial, several witnesses, including claimant, testified as to the nature of the work performed by claimant in the days leading up to his stroke. Specifically, Turner was engaged in a “turnaround” from October of 2010 until about two weeks prior to claimant’s stroke. A turnaround occurs when the refinery shuts down the equipment and performs maintenance. During a turnaround, the employees are required to work longer hours of about 80 to 90 hours per week, as opposed to working 40 hours per week during regular maintenance. According to Turner’s employment records, Mr. Gordon worked continually from October 11, 2010 until November 19, 2010 (the day of his stroke), with only one day off on November 11, 2010 to attend a doctor’s appointment, for a total of 39 days.
On November 10, 2010, Mr. Gordon began to experience pain in his right arm while at work. Prior to November 10, 2010, he worked out at the gym, including weightlifting, two to three days a week. He testified that he went to the Lgym after work on November 10, 2010, but that he abstained from lifting weights that evening due to his arm pain. When Mr. Gordon woke up the next morning, his arm was still hurting. As a result, he took off of work and made an appointment with Dr. Phuong T. Vo on November 11, 2010. Dr. Vo diagnosed claimant with a cervical strain, and advised him to take it easy. Claimant returned to work the following day on light duty, but returned to his normal work responsibilities thereafter until the day of his stroke on November 19, 2010.
Claimant’s co-workers, Harry Hebert and Mike Surrency, and his foreman, Earl Danos, testified at trial. All three witnesses described the work of a boilermaker as strenuous and physically demanding. *550 Mr. Surrency testified that the work boilermakers perform during a turnaround consists of generally the same work activities that they perform during regular working days. The primary difference is that the work is more tedious during a turnaround because boilermakers are working longer hours during each shift. Mr. Surrency and claimant’s foreman, Earl Danos, testified that Turner’s policy is for boilermakers to work 13 days and then take a day off. Although Mr. Danos and Mr. Hebert both stated that boilermakers will often work more than two weeks straight without a day off during a turnaround, both witnesses testified that it is unusual for a boilermaker to work more than one month straight with only one day off.
The deposition of claimant’s treating physician, Dr. Freiberg, was introduced into evidence at trial. Dr. Freiberg testified that a dissected vertebral artery like the one he examined in Mr. Gordon’s case is usually caused by “mechanical, abnormal strain or stress to the artery.” Claimant told Dr. Freiberg that the pain started while he was at work. He did not describe a specific injury that precipitated the pain. Dr. Freiberg opined that the “type of work [claimant] does can give you a dissection.” Dr. Freiberg testified that claimant informed him |fithat he began to experience upper neck/lower head pain at work a couple of days before his stroke. Dr. Frei-berg did not believe that the dissection occurred on the day of claimant’s stroke, but rather that it occurred at the time claimant began to experience pain a couple of days prior to his stroke. He explained that there is a latent period of a few days to a week between the time of the dissection and the onset of stroke symptoms. He stated that it is possible that claimant had sustained the dissection at the time he saw Dr. Vo on November 11, 2010, but that he could not be certain because no MRI images of claimant’s artery were taken at that time.
Although Dr. Freiberg could not say for sure whether claimant’s long work hours and lack of rest contributed to his stroke, he testified that he had “no doubt in [his] mind” that claimant’s arterial dissection was related to his work. He also testified that the physical work that claimant was performing on or about November 19, 2010 was “the dominate [sic] and major cause” of his stroke. Dr. Freiberg did not find any other health factors or pre-existing conditions that contributed to Mr. Gordon’s stroke, and concluded that the incidence of strokes in 36 year-olds, such as claimant, is uncommon.
The OWC judge rendered a judgment on January 19, 2012, ruling that claimant’s stroke was not work-related and dismissing Mr. Gordon’s claims with prejudice. As a result, claimant filed a motion for appeal, which was granted on February 23, 2012. In claimant’s original appeal, he raised the same three assignments of error that he now raises in the instant appeal. Because there was no indication in the record that the OWC judge considered the issue of a delay in treatment raised in claimant’s second assignment of error, we issued a judgment on December 11, 2012 remanding the matter to the OWC court for consideration and ruling on that issue. Gordon v. Turner Indus. Group, L.L.C., 12-388 (La.App. 5 Cir. 12/11/12); 106 So.3d 1130. On remand, the parties agreed to submit the issue Rto the OWC court on briefs. On January 16, 2013, the OWC judge rendered a judgment on remand in favor of defendant, dismissing claimant’s claims with prejudice. Claimant now appeals.
ASSIGNMENTS OF ERROR
Claimant raises the following assignments of error on appeal:
*551 1. The OWC court erred by failing to find that claimant suffered a stroke due to unusual work conditions and that it was not caused by some other source of stress.
2. The OWC court erred by failing to find that the defendant exacerbated the neurological injuries suffered by the claimant while at work.
3. The OWC court erred in allowing the introduction of claimant’s deposition for alleged impeachment. The misinterpretation of the information therein caused the court to improperly conclude that the claimant had been impeached.
LAW AND ANALYSIS
It is well settled that worker’s compensation laws must be given a liberal interpretation. Harold v. La Belle Maison Apartments, 94-0889 (La.10/17/94); 643 So.2d 752, 757. In his first assignment of error, claimant contends that the OWC court erred in failing to find that he met the burden of proof required of perivascu-lar injury claimants seeking workers’ compensation benefits as specified in La. R.S. 23:1021(8)(e). An employee who has suffered a cerebrovascular accident, or stroke, has suffered a perivascular injury within the meaning of La. R.S. 23:1021(8)(e). Charles v. Travelers Ins. Co., 627 So.2d 1366, 1369 (La.1993). La. R.S. 23:1021(8)(e) imposes an elevated burden of proof (clear and convincing) on claimants seeking to recover compensation benefits for heart-related or perivascular injuries. Hatcherson v. Diebold, Inc., 00-3263 (La.5/15/01); 784 So.2d 1284, 1287. The clear and convincing burden of proof is an intermediate standard that falls somewhere between the ordinary preponderance of the evidence civil standard and the beyond a reasonable doubt criminal standard. |7M at 1288. The purpose of this heightened burden is to exclude from coverage employees who just happen to suffer perivascular injuries at work. Harge v. MCC Specialty Contractors, Inc., 94-790 (La.App. 5 Cir. 2/15/95); 650 So.2d 425, 427.
The statute provides as follows:
A heart-related or perivascular injury, illness, or death shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence that:
(i) The physical work stress was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation, and
(ii) The physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of the heart-related or perivascular injury, illness or death.
La. R.S. 23:1021(8)(e). In essence, the two prongs of La. R.S. 23:1021(8)(e) both require a comparison of the physical work stress experienced by the employee to (1) the stress experienced by the average employee in that occupation; and (2) some other source of stress or preexisting condition. Hatcherson, 784 So.2d at 1290-91.
Under the first prong, the term “extraordinary” is defined as “going beyond what is usual, regular or customary,” and the term “unusual” is defined as “not usual, uncommon and not in accordance with usage, custom or habit.” Harold, 643 So.2d at 755. As such, the Louisiana Supreme Court has held that claimants seeking recovery of benefits under La. R.S. 23:1021(8)(e) are required to prove that their physical work stress went “beyond what was usual, regular or customary in *552 relation to the average employee in that occupation.” Id.
Our standard of review in workers’ compensation cases is governed by the manifest error or clearly wrong standard. Morris v. Reve, Inc., 95-310 (La.App. 5 Cir. 10/18/95); 662 So.2d 525, 529, writ denied, 95-3037 (La.2/16/96); 667 So.2d 1055 (citing Smith v. Louisiana Dept. of Corrections, 93-1305 (La.2/28/94); 633 So.2d 129). In this ease, the evidence shows that Mr. Gordon’s stroke occurred towards the conclusion of his 39th consecutive day of work, with the exception of one day off approximately 10 days prior to attend a doctor’s appointment. Mr. Gordon contends that his stroke resulted from the physical work stress of working so many days in a row without sufficient time off from work. Turner contends that the OWC judge properly found that Mr. Gordon failed to meet his burden of proof because his co-workers testified that the specific tasks that he was performing at the time of the stroke were simply the normal, usual, and regular duties of a boilermaker.
Turner also contends that the amount of hours Mr. Gordon worked around the time of the stroke was not extraordinary or unusual because claimant’s co-workers and foreman testified that it was not unusual for boilermakers to work several weeks during a turnaround without a day off. In addition, Turner argues that after the turnaround ended in early November of 2010, Mr. Gordon worked mostly 8-hour days from November 8, 2010 to November 18. Furthermore, Turner emphasizes that Mr. Gordon went to the gym to work out after finishing his shifts at Turner from November 8-10 and 16-18.
The OWC judge ruled in favor of Turner, finding that Mr. Gordon failed to meet his burden of proving that his perivascular injury was work-related. As for the first prong of La. R.S, 23:1021(8)(e), the OWC judge concluded that Mr. Gordon did not experience extraordinary or unusual work stress on the day of his stroke because he was merely performing the normal duties of a boilermaker at that time. The judge also emphasized that the turnaround had already ended by the time Mr. Gordon suffered his stroke. With respect to Mr. Gordon’s assertion that Rthe number of days worked in a row and inadequate rest caused his stroke, the OWC judge noted that she “could not overlook the fact that Mr. Gordon was also going to the gym after finishing his shift for Turner, as opposed to going home to rest.”
In Morris v. Reve, Inc., 95-310 (La.App. 5 Cir. 10/18/95); 662 So.2d 525, writ denied, 95-3037 (La.2/16/96); 667 So.2d 1055, we addressed a heart attack claimant’s ability to recover workers’ compensation benefits under similar circumstances. In Moms, a 34 year-old cement finisher collapsed and died from a heart attack that he suffered while on the job. At the time of the decedent’s heart attack, it was 1:00 p.m. in June, with a temperature of 91 degrees and a heat index of 104 degrees. Several of decedent’s co-workers testified that in cement finishing, work is usually completed by 11:00 a.m. or 12:00 p.m. between the months of May through August. His co-workers also testified that working after that time during the summer months is unusual. All of decedent’s co-workers were performing the same job and doing the same work at the time of his heart attack. The OWC court denied the decedent’s mother an award of benefits, finding that she had failed to carry her burden of proving a compensable heart-related or perivascular injury.
On appeal, we reversed the judgment of the OWC court. We held that under the “extraordinary and unusual” physical work stress -requirement of La. R.S. *553 23:1021(8)(e), the test is whether the “ ‘average’ employee in cement finishing would normally be engaged in that particular type or degree of work under the extremely hot and stressful conditions that [decedent] and his co-workers were working at 1:00 p.m. on June 16.” Id. at 529 [emphasis in original]. As a result, we found that the fact that all of the cement finishers on the job at the time of the decedent’s heart attack were performing the same work at the same time of day | ,0was not determinative and did not preclude the claimant’s recovery of benefits. Id. “If an employer chooses to subject his workers to extraordinary, unusual and dangerous conditions in order to complete a job rather than stopping at a safe time as is usually done, then he must bear the consequences of what happens to his employees under the greater risk of harm arising from these dangerous and unusual conditions.” Id.
The evidence in this case shows that it is Turner’s policy for its boilermakers to work 13 days straight and then take one day off. Despite this policy, Mr. Gordon worked 39 days straight, with the exception of one day off. During the majority of those 39 days, Mr. Gordon worked 11.5 hour shifts, which consisted of strenuous physical labor. While we acknowledge that claimant’s co-worker and foreman testified that boilermakers often work physically demanding shifts for more than two weeks without a day off during a turnaround, we do not find that testimony to be sufficient to defeat claimant’s claim.
Simply because all of the boilermakers that Turner has allowed to work beyond 13 days in a row have not had strokes does not mean that Mr. Gordon’s 39-day work schedule was not extraordinary and unusual in comparison to the “average” boilermaker. Both Mr. Hebert and Mr. Danos testified that it was unusual for a boilermaker to work more than one month without a day off, as Mr. Gordon had done at the time of his stroke. Additionally, claimant’s stroke occurred approximately two weeks after the turnaround ended. This means that despite the fact that Turner was no longer engaged in a turnaround, claimant continued to work 7 days a week without a day off during Turner’s regular maintenance schedule. Therefore, Turner’s claim that its boilermakers often work for more than two weeks without a day off during a turnaround is insufficient to In defeat Mr. Gordon’s showing of extraordinary and unusual physical work stress in this case.
Considering the foregoing evidence, we find that working 39 days in a row with only one day off caused extraordinary and unusual physical work stress in comparison to the ordinary stress experienced by the “average” boilermaker. Therefore, we hold that the first prong of La. R.S. 23:1021(8)(e) has been established by clear and convincing evidence.
Similarly, under the second prong of La. R.S. 23:1021(8)(e), we find that the evidence also shows that the physical work stress of working 39 days in a row with only one day off was the predominant and major cause of Mr. Gordon’s perivascular injury. The only medical testimony offered at trial was that of Dr. Freiberg. Dr. Freiberg testified that Mr. Gordon’s arterial dissection was related to his work and that the physical work Mr. Gordon performed on or about November 19, 2010 was “the dominate [sic] and major cause” of his stroke. He also testified that at the time of Mr. Gordon’s stroke, he was 36 years old and without any other pre-exist-ing conditions that could have contributed to his stroke. There is no indication in the record of any medical evidence suggesting that Mr. Gordon’s arterial dissection or stroke were caused by any source of *554 stress, including weightlifting, other than his work.
As set forth by the Louisiana Supreme Court, the purpose of the heightened burden of La. R.S. 23:1021(8)(e) is to prevent the recovery of benefits for claimants who happen coincidentally to have a heart-related or perivascular injury at the workplace, but which is caused by non-work related factors. We do not find that this purpose is served by denying indemnity and medical benefits to a 36-year-old man without any pre-existing health conditions who has a stroke at his 112workplace at the end of his 39th consecutive day of work, with the exception of one day off.
Based on the entirety of the record, under the particular facts of this case, we find that the OWC court was manifestly erroneous in finding that Mr. Gordon failed to meet his burden of proof under La. R.S. 23:1021(8)(e). Interpreting workers’ compensation laws liberally, we find that Mr. Gordon did prove by clear and convincing evidence that he suffered a compensable perivascular injury while performing physically demanding work for 39 days in a row, with the exception of only one day off. We find these conditions to be extraordinary and unusual in comparison to the physical stress or exertion experienced by the “average” boilermaker, and that such physical work stress was the major and dominant cause of Mr. Gordon’s arterial dissection and stroke. Therefore, Mr. Gordon is entitled to an award of indemnity and medical benefits. As a result of this finding, the two remaining assignments of error are rendered moot.
CONCLUSION
Accordingly, for the reasons stated herein, we reverse the January 16, 2013 judgment of the workers’ compensation court, dismissing Mr. Gordon’s claims with prejudice. We remand the matter to the workers’ compensation court for an award of indemnity and medical benefits.
REVERSED AND REMANDED.