| THIBODEAUX, Judge.
The defendant-appellant, Diebold, Inc., appeals the judgment of the Office of Workers’ Compensation Administration in favor of plaintiff-appellee, Balladette Hatcherson. Mrs. Hatcherson’s husband, Nathaniel Hatcherson, died on February 1, *823 1997 of a pulmonary thromboembolism. Mr. Hatcherson’s death occurred several months after a work-related accident where he sustained a lumbar herniated disk.
The workers’ compensation judge (hereinafter “WCJ”) ruled that Mr. Hatcher-son’s death was a compensable perivascu-lar event and considered a personal injury by an accident arising out of and in the course of employment in accordance with La.R.S. 23:1021(7)(e). For the following reasons, we affirm.
I.

ISSUES

The issue presented for review is whether the workers’ compensation judge erroneously concluded that Mr. Hatcherson’s condition was compensable under La.R.S. 23:1021(7) (e) which relates to a heart-related or perivascular injury, illness or death.
II.

FACTS

Nathaniel Hatcherson injured his lower back on June 5, 1996 when he lifted a five-gallon container of water at the Diebold office in Lafayette where he was employed. At the time of the accident, Mr. Hatcherson weighed between 300 and 450 pounds. Mr. Hatcherson had been obese his entire adult life. Mr. Hatcherson sought | ^medical care from Dr. Gerald Watts, Dr. Ernest Kinchen and Dr. Jack Hurst. Dr. Watts diagnosed a lumbar herniated disc and recommended that Mr. Hatcherson have surgery after he lost weight. Mr. Hatcherson continued to fulfill his duties as a customer service manager during the time of his injury and to earn his full salary of $950.31 per week. If Mr. Hatcherson chose not to work during his injury, he would have been entitled to receive the maximum rate of compensation benefits. From June 5,1996 until the time of his death on February 1, 1997, Mr. Hatcherson conducted most of his work-related activities from his home, while lying in bed or on the floor.
During this time, Mr. Hatcherson spent between sixteen and eighteen hours a day lying down. Mr. Hatcherson’s job did not involve heavy manual labor but rather office-type work where he supervised a number of employees.
On February 1, 1997 while traveling from a work-related meeting in San Antonio, Texas back to his home in Lafayette, Louisiana, Mr. Hatcherson and his wife stopped over at the home of a friend who lived in Kingswood, Texas. He was too ill to continue to Lafayette. Mrs. Hatcher-son testified that by the time they had arrived in Kingswood, Mr. Hatcherson was in such severe pain that he could no longer ride in the company van. When they arrived at their friends’ home, Mr. Hatcher-son stayed on the couch for four or five hours. He took his medicine and went to bed because he was feeling badly. The couple awoke the next morning at 5:00 a.m. but Mr. Hatcherson was in such severe pain he could not get out of bed. Later that morning he was able to make it to the bathroom where he remained in the bathtub for several hours. He was still in tremendous pain and felt he was unable to leave for Lafayette. Finally that evening he felt he could make the trip home but his wife was fatigued so they decided to lie down for a while. Mrs. Hatcherson testified that he laid down on the floor next to her and put his arm around her. He then | ¡^became violently ill and experienced the sudden perivascular event. Repeated attempts of CPR failed. The cause of death was listed as a pulmonary thromboembolism.
III.

LAW AND DISCUSSION

Standard of Review
An appellate court in Louisiana is constitutionally authorized to review *824 both law and facts. La. Const, art. V, § 10(B). An appellate court may not set aside the factual findings of a worker’s compensation judge in the absence of manifest error or unless it is clearly wrong. Stobart v. State through Dep’t of Tramp, and Dev., 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). The appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one, after reviewing the record in its entirety. Mart v. Hill, 505 So.2d 1120 (La.1987); Stobart, 617 So.2d 880; Rosell, 549 So.2d 840. Even where the appellate court believes its inferences are more reasonable than the factfinder’s, reasonable determinations of fact should not be disturbed on appeal. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Work Stress Under La.R.S.
23:1021(7) (e)
Diebold contends that the trial court erred in concluding a pre-existing lower back injury was a physical work stress under the following statute. Louisiana Revised Statutes 23:1021(7)(e) provides in pertinent part that:
[A] heart related or perivascular injury, illness or death shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this statute unless it is illustrated by clear and convincing evidence that one, the physical | ¿work stress was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation, and two, the physical work stress or exertion and not some other source of stress or pre-ex-isting condition was the predominant and major cause of the heart-related or perivascular injury, illness or death.
 The trial court found that Mr. Hatcherson’s work stress was extraordinary and/or unusual in comparison to the physical work stress experienced by the average employee in his occupation because Mr. Hatcherson had sustained a previous work-related lower back injury. No other employee in Mr. Hatcherson’s occupation was laboring under the debilitating effects of a herniated lumbar disk. Also, his physical condition in and of itself was extraordinary and unusual in comparison to other employees in the same occupation. No other employee suffered from the same extreme weight condition as Mr. Hatcher-son. Additionally, it is well established and the courts have firmly followed the principle that the employer must take the worker as he finds him. Behan v. John B. Honor Co., 143 La. 348, 78 So. 589 (1917). An abnormally susceptible employee is entitled to no less protection under the workers’ compensation law than a healthier employee. Baker v. Conagra Broiler Co., 93-1230 (La.App. 3 Cir. 5/4/94); 640 So.2d 494, writ denied, 94-1435 (La.9/23/94); 642 So.2d 1289. It is not important that the disease or weakened condition might alone have eventually caused death. Id.
The herniated lumbar disk that Mr. Hatcherson suffered from may not have directly caused his pulmonary thromboem-bolism but it most certainly accelerated and aggravated his condition to the extent that his work stress was greatly increased over that experienced by other employees similarly situated. At the time of his death, Mr. Hatcherson was in severe and debilitating pain, uncomfortable and traveling a far distance from his home in order to attend a work-associated seminar. 1 BIt was an injury he suffered at work which caused him to be in the physical condition he was in at the time of his death. Accordingly, we affirm the WCJ in finding that Mrs. Hatcherson discharged her legal obligation under La.R.S. 23:1021(7)(e). Mr. Hatcherson established that his physical condition and the debilitating and severe pain he suffered as a result of the inoperable lumbar herniated disk was a physical work stress and extraordinary and unusual in comparison to the stress or *825 exertion experienced by the average employee in Mr. Hatcherson’s field.
Prior Back Injury was the Predominant and Major Cause of the Perivascular Event
The second prong of the statute requires the claimant to prove by clear and convincing evidence that his physical work stress or exertion, and not some other source of stress or pre-existing condition, was the predominant and major cause of the heart-related or perivascular injury, illness or death. In Diebold’s second assignment of error, it contends that the WCJ erred in concluding that claimant’s pulmonary thromboembolism was work related. Diebold contends that the testimony of the physicians as well as the testimony of Mrs. Hatcherson and the Diebold representative, Ron Shepherd, all prove the work-related accident and work activities of Mr. Hatcherson had nothing to do with the pulmonary thromboembolism. Diebold further contends that Mr. Hatch-erson’s perivascular injury was the result of two non-work related conditions: specifically, venous insufficiency and a significant overweight condition.
Dr. Kinchen testified in deposition that the decrease in mobility experienced by Mr. Hatcherson due to his work related lumbar herniated disc could cause or contribute to the development of the pulmonary thromboembolism which ultimately caused his death. Mrs. Hatcherson testified that, except for time spent 1 traveling, the majority of her husband’s work after the June 5, 1996 accident was performed by him in bed and/or on the floor at home. When travel was required, Mrs. Hatcher-son testified she would drive. Diebold’s own employee admitted that some meetings were moved to Mr. Hatcherson’s house because Mr. Hatcherson was unable to attend. His pain was so severe that he was not able to attend physical therapy or make his scheduled doctor’s appointments after December 11,1996.
Mrs. Hatcherson testified that her husband’s pain and immobility increased in the last six weeks of his life. He ate all of his meals on the floor and did his work-related duties while lying on the floor. His wife bathed him while he lay on the floor and he was forced to use a bedpan. Mrs. Hatcherson also testified that after the accident and especially in the last month of his life, her husband was virtually immobile, lying on the floor sixteen to eighteen hours a day.
Dr. Ernest Kinchen, Mr. Hatcherson’s treating physician, did not find that Hatch-erson suffered from venous insufficiency or neuropathy in the lower extremities. Dr. Kinchen found that Mr. Hatcherson exhibited no problems with circulation and had good strong pulses down to his feet. Dr. Kinchen also noted Mr. Hatcherson had no heart or lung problems. Dr. Kinchen testified that a very heavy person such as Mr. Hatcherson who curtails his activity to the extent Mr. Hatcherson had curtailed his, will increase the likelihood that a clot or embolism will form in the extremities. A pulmonary thromboembolism is a condition in which the pulmonary arteries are obstructed with a clot or thrombosis from another source in the body, and the clot travels into the lungs and blocks the pulmonary artery. When the pulmonary artery is blocked it causes the patient to die. In his deposition, Dr. Kinchen also noted that obesity and extended bed rest are both risk factors for pulmonary 17thromboembolisms and that the risk increases proportionately in an obese patient such as Mr. Hatcherson.
Diebold relies heavily on the testimony of Dr. Bruce Iteld, a board certified expert in the field of cardiovascular medicine. Dr. Iteld testified that the lower back injury was not the predominant and major cause of the pulmonary thromboem-bolism. However, Dr. Iteld never examined Mr. Hatcherson. Even if Dr. Iteld had conducted an examination as did his treating physician, Dr. Kinchen, our jurisprudence accords superior weight to the treating physician. It is clear under Loui *826 siana law that “[t]he diagnosis and opinions of treating physicians are entitled to more weight than those doctors examining the plaintiff for litigation purposes only.” Jaeckle v. Dresser Industries, Inc., 457 So.2d 646, 648 (La.1984).
Dr. Iteld also testified that it was a combination of Mr. Hatcherson’s obesity and his venous condition which caused his death. However, even if there were a preexisting condition, nevertheless workers’ compensation benefits are payable when a work-related accident aggravates or accelerates it, producing disability. Johnson v. Travelers Insurance Co., 284 So.2d 888 (La.1973). Based on the testimony presented at trial, it is uncontradicted that Mr. Hatcherson was very immobile from his accident in June 1996 to his death in February 1997. Dr. Kinchen testified that this increased immobility could cause the increased likelihood of a pulmonary embolism. A claimant is only required to show that the work related accident aggravated or accelerated a current condition. Mr. Hatcherson met the second prong of the statute requiring that he prove by clear and convincing evidence that his physical work stress or exertion, and not some other source of stress or pre-existing condition, was the predominant and major cause of the heart-related or perivascular injury, illness or death.
|sThe trial court did not commit manifest error and was not clearly wrong. Thus, we affirm the judgment of the Office of Workers’ Compensation Administration that Mr. Hatcherson’s physical work stress or exertion was the predominant and major cause of his perivascular injury leading to his demise and awarding benefits to Mrs. Hatcherson.
IV.

CONCLUSION

Nathaniel Hatcherson suffered a peri-vascular injury when he succumbed to the throes of a pulmonary thromboembolism. Mrs. Hatcherson showed by clear and convincing evidence that her husband’s work stress was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation. Mrs. Hatcherson has also sustained the burden of proving that the prior work-related accident that left her husband virtually immobile had a causal relationship to the pulmonary thromboembolism and the physical work stress was the predominant and major cause of his peri-vascular condition.
Accordingly, we affirm the judgment of the trial court; all costs are assessed against the defendant-appellant, Diebold, Inc.
AFFIRMED.