784 So.2d 1284 (2001)
Nathaniel HATCHERSON, Est. of Balladette Hatcherson, Wife
v.
DIEBOLD, INC.
No. 2000-C-3263.
Supreme Court of Louisiana.
May 15, 2001.
*1286 Dennis R. Stevens, Gibbens & Stevens, New Iberia, Counsel for Applicant.
James Wattigny, Lafayette, Counsel for Respondent.
CIACCIO, Justice pro tempore.[*]
This is a workers' compensation action asserting a claim for death benefits. Plaintiff's husband, a customer service manager, died shortly after suffering a pulmonary thromboembolism.[1] Defendant conceded that decedent was in the course and scope of employment at the time of death, but contested the compensability of the death, asserting the stringent standards of La.Rev.Stat. 23:1021(7)(e) for recovery based on a heart-related or perivascular illness were not satisfied. The workers' compensation hearing officer found the statutory requirements were satisfied and thus awarded death benefits. The court of appeal affirmed.[2] On defendant's application, we granted certiorari to address the correctness of that decision.[3] For the foregoing reasons, we reverse.

Facts
The facts are virtually undisputed. On June 5, 1996, about eight months before his death, Nathaniel Hatcherson sustained a work-related accident, suffering a lumbar herniated disc on the job.[4] This work-related *1287 accident occurred when he lifted a five-gallon water jug at the Diebold office in Lafayette, Louisiana, where he was employed. As a result of this accident, an employer's report of occupational injury or disease was filed with the Office of Workers' Compensation Administration. Although this accident may have entitled Hatcherson to collect compensation benefits, he opted to continue working and thereby to collect his full salary.
During the eight month interval between the June 1996 accident and his death in February 1997, Hatcherson continued working for defendant, but worked primarily at home while lying down due to back pain. According to plaintiff, her husband spent between sixteen to eighteen hours a day lying down, and his activity level decreased even more during the weeks immediately before he died.
At trial, Hatcherson's direct supervisor, Ron Shepherd, described both the nature of defendant's business and the decedent's job duties. Diebold furnishes bank equipment, including automatic teller machines, security devices, vaults and safes. Hatcherson's job duties were administrative in nature, involving supervising other employees.
The last job-related function Hatcherson performed was attending a week long company seminar during the last week of January 1997 in San Antonio, Texas. The purpose of this seminar was to recognize division accomplishments over the past year and to roll out the company's business goals and strategies for the next year. This seminar, Shepherd testified, did not involve any physical work stress; to the contrary, it was intended "to limit any of that."
Plaintiff accompanied Hatcherson on the trip to San Antonio for the seminar; in fact, she drove him there in a company vehicle. On the return trip from San Antonio to Lafayette, they stopped over at a friend's house in Kingswood, Texas, because Hatcherson was in too much pain to complete the remaining five hour drive home. On the following day, he experienced a sudden perivascular event at the friend's home and never recovered. The autopsy report and death certificate list the cause of death as pulmonary thromboembolism.
This disputed claim for workers' compensation death benefits followed. Defendant conceded that the decedent was in the course and scope of his employment, but contended the death was not work-related since the stringent requirements of La. Rev.Stat. 23:1021(7)(e) for recovery based on a perivascular illness were not satisfied.

La.Rev.Stat. 23:1021(7)(e)
The controlling statutory provision in this case is La.Rev.Stat. 23:1021(7)(e), enacted in 1989, which imposes an elevated burden of proof on claimants seeking to recover compensation benefits for heart-related or perivascular injuries;[5] particularly, it provides:
A heart-related or perivascular injury, illness, or death shall not be considered a personal injury by accident arising out of and in the course and scope of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence that:
(i) The physical work stress was extraordinary and unusual in comparison to the stress or exertion *1288 experienced by the average employee in that occupation, and
(ii) The physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of the heart-related or perivascular injury, illness, or death.
This statute is significant in that it changed the law regarding such injuries in three respects. Harold v. La Belle Maison Apartments, 94-0889 (La.10/17/94), 643 So.2d 752. First, it imposes a heightened burden of proofclear and convincingwhich is an "intermediate" standard falling somewhere between the ordinary preponderance of the evidence civil standard and the beyond a reasonable doubt criminal standard. Black's Law Dictionary 227 (5th ed. 1979). Second, it requires the physical work stress be compared to the stress experienced by the average employee in that occupation as opposed to the stress of every day life. Finally, "it heightens the required causal link between that work stress and the heart injury by requiring the physical work stress to be the predominant and major cause of the heart-related or perivascular injury." Harold, 94-0889 at p. 5, 643 So.2d at 755. Significantly, the statute restricts such compensable perivascular injuries to those arising out of physical, as opposed to mental, stress.
In sum, the statute redefines for perivascular injuries the term "accident" in the negative. As a noted scholar in this area summarizes the statutory definition:
As for vascular accidents, they are defined to be non-compensable unless there is "clear and convincing evidence" that the physical stress on the job was "extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation" and the physical job stress was the "predominant and major cause" of the vascular accident.
H. Alston Johnson, Workers' Compensation, 50 La. L.Rev. 391, 394 (1989).

Proceeding before Workers' Compensation Hearing Officer
The worker's compensation hearing officer framed the issue presented as two-fold:
One, whether or not this is a perivascular incident which should be controlled by the heart-related provisions of the Act; or whether or not it's an accident which would be controlled by the accident provision of the Act; and [two] whether the employee's confinement after the '96 accident, if it is an accident, combined with, accelerated or aggravated his condition to such an extent that it caused his death; or whether or not if it's a perivascular incident he was subjected to some extraordinary or unusual stress in relationship to other employees in the same field to cause his death.
First, citing Charles v. Travelers Insurance Co., 627 So.2d 1366 (La.1993), the workers' compensation hearing officer found that the pulmonary thromboembolism Hatcherson suffered was a perivascular incident covered by Section 1021(7)(e).[6] That finding was accepted by the appellate *1289 court and not questioned by the parties before this court.
Second, in finding the statutory requirements satisfied by the facts, the workers' compensation hearing officer equated physical work stress with the decedent's physical condition, reasoning:
Hatcherson's work stress was extraordinary and unusual in comparison to the physical work stress experienced by the average employee in his occupation. The court reaches this conclusion based on the fact that no other employee in Hatcherson's occupation was laboring under the debilitating effects of a herniated lumbar disk. His physical condition in and of itself was extraordinary. While the herniated lumbar disk did not cause Hatcherson's death, it certainly combined with, accelerated and aggravated his condition to the extent that his work stress was greatly increased over tha[t] experienced by other employees in his occupation. (Emphasis supplied).
Invoking the principle that an employer takes the employee as he finds him and that abnormally susceptible employees are entitled to the same protection under the workers' compensation law as healthier employees, the workers' compensation hearing officer continued:
Hatcherson cannot be compared with the average employee on the date of his death because he was not in the same physical condition on that date as the average employee. He was in pain, uncomfortable and traveling a far distance for work-related reasons. It was work-related reasons which put him in the place he was at the time he was there, and it was work which caused him to be in the physical condition he was at the time of his death. (Emphasis supplied).
The workers' compensation hearing officer also rejected the medical testimony of defendant's expert, Dr. Iteld, regarding causation; particularly, Dr. Iteld's opinion was that the cause of death was the result of the decedent's two pre-existing conditions of morbid obesity coupled with his venous insufficiency. Rejecting that medical causation testimony and characterizing causation in worker's compensation matters as not only a medical, but also a legal, issue, the court found that "legally": "Hatcherson's physical condition, the debilitating and severe pain he suffered as a result of the inoperable lumbar herniated disk" aggravated his physical condition to the point that "his already weakened body succumbed to the throws of the embolism which ultimately caused his death."

Appellate court's decision
Affirming the workers' compensation hearing officer, the court of appeal commented that the herniated lumbar disk "may not have directly caused his pulmonary thromboembolism;" nonetheless, the court concluded that it "accelerated and aggravated" Hatcherson's physical condition to the extent that his work stress was "greatly increased over that experienced by other employees similarly situated." 00-549 at p. 4; 773 So.2d at 824. Stated otherwise, the court concluded:
[Hatcherson's] physical condition and the debilitating and severe pain he suffered as a result of the inoperable lumbar herniated disk was a physical work stress and extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in Mr. Hatcherson's field.
00-549 at p. 5, 773 So.2d at 824-25 (emphasis supplied).
As to causation, the intermediate court noted that an employer is responsible for work-related accidents that aggravate or accelerate pre-existing conditions. Stressing as uncontradicted the fact that Hatcherson was "very immobile" during the interval between his June 1996 accident and his February 1997 death and citing the testimony of the decedent's treating physician, *1290 Dr. Kinchen, that this increased immobility coupled with obesity could cause an increased likelihood of a pulmonary embolism, the court held the workers' compensation hearing officer was not manifestly erroneous in finding the physical work stress was the predominant and major cause of death.

Issue Presented
Since this statute was enacted in 1989, we have construed it only on two prior occasions: Charles v. Travelers Insurance Co., 627 So.2d 1366 (La.1993), and Harold v. La Belle Maison Apartments, 94-0889 (La.10/17/94), 643 So.2d 752. Each party cites as controlling one of these cases: plaintiff cites Harold; defendant, Charles.
In Harold, we addressed the statutory requirement that the physical work stress be extraordinarily stressful. In reversing the lower courts, we applied what a commentator characterized as a "curious means of finding the work activity to be unusually stressful." Denis Paul Juge, Louisiana Workers' Compensation § 8.5 at 8-33 (2nd ed. 2001). We reasoned:
Being required to perform physical labor while in pain is not usual, regular, or customary for maintenance workers, which was Mrs. Harold's occupation. Therefore, Harold has successfully proven that her physical work stress was extraordinary and unusual in comparison to that of the average employee in that occupation.
94-0889 at pp. 6-7, 643 So.2d at 755-56 (emphasis supplied).[7]
As to whether the job duties were unusually stressful, plaintiffs argument, accepted by the lower courts, is that Hatcherson's physical conditionherniated disc with concomitant pain and immobility satisfied the statutory requirement of extraordinary physical work stress. Apparently, plaintiffs position is that Hatcherson, like Harold, was working in pain and that this rendered the work unusually stressful.
Plaintiffs reliance on Harold, supra, is misplaced; Harold involved a maintenance employee whose job duties were expressly noted by both lay and expert witnesses to be physically stressful, requiring exertion of manual labor. Such is lacking in this case.
Defendant counters that Charles is controlling.[8] Following the reasoning in Charles, defendant contends, the proper focus should have been not on Hatcherson's physical condition, but rather on the actual physical work he was performing at the time of his death. Defendant also cites an appellate case for the proposition that physical work stress refers to the work actually being performed by the employee at the time of the injury or death. See Gooden v. B E & K Construction, 33,457 (La.App. 2nd Cir.6/23/00), 764 So.2d 1206. We conclude that defendant's argument has merit.

"Physical work stress" requirement
The special statutory twist this case presents, warranting our exercise of jurisdiction, is that the facts of this case do not present the fundamental requirement of "physical work stress." Without "physical work stress" it becomes pointless to attempt to apply the two statutory requirements of Section 1021(7)(e), which both involve a comparison of the physical *1291 work stress experienced by the employee in the case before the court to other factors (i) the stress experienced by the average employee in that occupation, and (ii) some other source of stress or preexisting condition. Indeed, the relevance of the employee's physical condition enters the equation in making the latter comparison; hence, it is illogical to equate physical work stress under this statute with a preexisting physical condition.
The requirement of physical work stress means "physical work stress in the job environment." 13 Wex S. Malone & H. Alston Johnson, Louisiana Civil Law Treatise: Louisiana Workers' Compensation Law and Practice § 261 p. 668 (3rd ed. 1994). Physical work stress, as defendant points out, thus requires an analysis of the job duties the plaintiff was actually performing at the time of accident or death.
Applying the proper definition of "physical work stress" to the facts of this case reveals that this fundamental requirement is lacking. Hatcherson's job did not involve manual labor; rather, he had an office job that entailed supervising several employees. As a customer service manager, Hatcherson's job duties were administrative in nature. He supervised slightly over a dozen service technicians' performance and equipment installation. He also had certain financial and customer relations duties. As to the latter duties, his job involved communicating with customers to ensure customer satisfaction levels were being met and customer contracts were being maintained. By nature, all of these duties were administrative, not physical. Indeed, his job involved the sedentary tasks of using the telephone, computer and car for travel.
Describing Hatcherson's job duties, Shepherd, Hatcherson's direct supervisor, testified that the job involved supervising other employees. When questioned as to whether Hatcherson's job entailed any physical work stress, Shepherd response was: "very limited. It would have been maybe a UPS package came in, and it would be opened and the parts in it. It's primarily administrative functions."
Likewise, the workers' compensation hearing officer found that decedent's job "did not involve heavy manual labor. Rather he held a[n] office-type job where he supervised a number of employees." And, plaintiff's own testimony indicated that she was unaware of any physical labor her husband engaged in during the interval between his June 1996 accident and his February 1997 death.
Given the lack of physical work stress, it would be theoretically flawed for us even to attempt to apply the two requirements of Section 1021(7)(e) to the facts of this case. Both factors are based on the underlying assumption of physical, as opposed to mental, work stress. At best, the pain and suffering decedent suffered as a result of his back injury, though lamentable, was a form of mental stress, which the Legislature opted in 1989 to exclude from coverage. Moreover, the Legislature opted to hinge coverage for perivascular illnesses upon proof of extraordinary or unusual physical stress or exertion. Given that plaintiff's entire case is premised on the decedent's physical inactivity over a protracted eight month period, the converse of the standard the Legislature opted to impose, this perivascular accident is clearly statutorily noncompensable.[9]
*1292 Given our conclusion that physical work stress is lacking and that the perivascular incident that resulted in Hatcherson's death is on that basis non-compensable, we pretermit consideration of whether his physical work stress was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation or the predominant and major cause of the perivascular incident. Unlike in Harold and Charles in which we analyzed whether these two statutory requirements were satisfied, this case presents facts in which physical work stress was nonexistent and an analysis of these two requirements would be meaningless.

Decree
For the foregoing reasons, the judgment of the court of appeal affirming the workers' compensation hearing officer and granting plaintiff claim for workers' compensation death benefits is reversed.
NOTES
[*] Philip Ciaccio, Justice Pro Tempore, sitting for Associate Justice Harry T. Lemmon; Associate Justice Harry T. Lemmon sitting for Associate Justice Bernette J. Johnson, recused.
[1] A pulmonary thromboembolism is defined as "[t]he obstruction of a blood vessel in a lung by thrombotic material (blood crusts) carried by the bloodstream from another blood vessel (where the crusts were formed)." 5 J.E. Schmidt, Attorneys' Dictionary of Medicine and Word Finder (1995).
[2] 00-549 (La.App. 3rd Cir.11/14/00), 773 So.2d 821.
[3] 00-3263 (La.2/2/01), 783 So.2d 377.
[4] At the trial of the death benefits claim, the parties stipulated that Hatcherson suffered a work-related lower back injury on June 5, 1996, that he was diagnosed as having a lumbar herniated disc, that surgery was suggested, but delayed because of the risks posed by his morbid obesity. At the time of this accident, he weighed between three hundred to four hundred and fifty pounds and was diagnosed a diabetic.
[5] As noted elsewhere, the workers' compensation hearing officer questioned whether this case involved a perivascular injury, but ultimately concluded, based on this court's decision in Charles v. Travelers Insurance Co., 627 So.2d 1366 (La.1993), that is was. That finding is not disputed.
[6] In Charles, we held the statute applied to a stroke. We noted the Legislature's choice of the word "perivascular" was apparently based on "the medical fact that embolisms and aneurysms do not only occur in the cerebral area but may also occur in virtually any blood vessel throughout the entire body." 627 So.2d at 1370-71. We specifically recognized a possible exception to the applicability of the statute for perivascular injuries that result directly from some physical impact arising in the course and scope of employment. 627 So.2d at 1371 n. 15. That exception was neither argued by the parties, nor medically supported by the record in this case.
[7] In Harold, the plaintiff also presented medical evidence that established a causal link between the delay in treatment caused by the employer requiring her to continue working while in pain and the heart attack; that evidence led us to conclude that the physical work stress was the predominant and major cause of the heart attack.
[8] As noted earlier, Charles held that a stroke is covered by this statute; however, based on the facts, we concluded the plaintiff failed to satisfy the stringent statutory requirements.
[9] Our conclusion raises a related issue of whether the Legislature in enacting this statute with its special definition of accident intended to exclude all perivascular injuries not meeting this definition and heightened standard from compensation coverage. In a footnote in Charles, we indicated that an exception would exist for cases involving a direct physical trauma, citing as examples injuries resulting from the puncture of an employee's chest and heart by a piece of equipment. 627 So.2d at 1371 n. 15. That narrow exception, however, is not applicable in this case.

This issue was touched upon in Latiolais v. Emile Barras, Inc., 94-1153 (La.App. 3rd Cir.3/1/95), 651 So.2d 409. There, the employee was involved in a work-related auto accident that resulted in a herniated disc. As a result of the back surgery caused by the accident, the plaintiff had to adopt a sedentary lifestyle. Contending that lifestyle change caused his heart problems, including a heart attack, albeit indirectly, the plaintiff sought to require the employer to pay his medical expenses arising out of the subsequent heart-related ailments. Significantly, the employee conceded that he could not prevail under Section 1021(7)(e) because "no extraordinary stress was involved in his heart problems," yet the employee contended that he should be allowed to recover under La. Rev.Stat. 23:1203 such reasonable expenses incurred as a result of medical complications from a legally compensable claim. Agreeing, the appellate court reasoned that the jurisprudence has uniformly recognized that complications suffered after work-related accidents resulting from treatments related to work-related accidents are recoverable. In this case, this argument was not raised.
Plaintiff in this case, however, does raise a similar lifestyle change argument. Particularly, plaintiff's reliance on the immobility resulting from the work-related back injury is a general lifestyle change argument. Similar arguments have been crafted over the years attempting to create work-related stress based on a work-related activities spanning a period of time that allegedly caused great stress which, in turn, allegedly was a contributing cause of a perivascular injury. Rejecting this type of stressful "working style" arguments, the courts have reasoned that such arguments overlook the fundamental requirement for a compensable work-related injury that there be an "accident." See Prejean v. Bituminous Casualty Corp., 125 So.2d 221 (La.App. 3rd Cir. 1960) (rejecting argument that general duties as policeman over eight year period caused great stress that was contributing cause of heart attack); see also Votano v. Tulane and Broad Exxon, Inc., 95-1064 (La.App. 4th Cir.11/30/95), 667 So.2d 1117, writ denied, 96-0768 (La.5/3/96), 672 So.2d 687 (rejecting argument that eighteen years of eating junk food while working long hours as owner and manager of service station was unusual physical work stress and distinguishing Harold in that plaintiff as owner chose to work long hours).