PAUL A. BONIN, Judge.
 

 IgThe surviving family members
 
 [1]
 
 of the late Robin Simmons filed a disputed claim for death benefits on form 1008, later amended, with the Office of Workers Compensation. Her employer
 
 [2]
 
 filed a motion for summary judgment. The Office of Workers’ Compensation Judge (OWCJ) granted the motion and dismissed the claim. From the dismissal, the family members devolutively appealed. For the reasons which follow, we affirm.
 

 I
 

 Ms. Simmons was an oft employed worker at a local condiment, spice and sauce production facility, Baumer Foods, Inc. She was assigned as a capper on the “rework” line or table. Her duties involved replacing labels and repackaging items. The assignment is considered light duty work. On May 4, 2005, she and her husband, also an employee, reported for their shift which began at 3:00 P.M. Within two hours, Ms. Simmons began complaining of chest pain. She was invited into the air conditioned office area. She experienced no relief; her pain and ^discomfort increased. When asked by her co-employees if she wanted an EMS unit summoned, she declined — apparently because she was personally uninsured and was concerned about the expense. At no time did her employer require or even request that she return to the rework line. When her symptoms did not abate, another employee used his own car to transport her to the hospital, which was not too distant. Her husband followed on his bicycle.
 

 Arriving at the hospital emergency room, the driver dropped her off in a wheelchair with a security guard and returned to the plant. By the time her husband located her, she had been pronounced dead.
 

 An autopsy disclosed that the contributing causes of her death were atheroscler-otic cardiovascular disease, a recent thrombotic occlusion of the left anterior descending coronary artery, a scar in the anterior left ventricular myocardium, and morbid obesity. Dr. David Elizardi, a cardiologist, established without objection or
 
 *225
 
 contradiction that “from the medical perspective, this is a typical presentation of a rupture of a vulnerable atherosclerotic plaque, and the precise physical activity preceding this has nothing to do with the timing of the rupture of the plaque.” It is not unusual, he further testified, that Ms. Simmons, who had no prior symptoms of angina or coronary artery disease before her myocardial infarct, or heart attack, died suddenly. It was Dr. Elizardi’s expert opinion that Ms. Simmons’ death was “not related in any fashion to her course of employment or working conditions.”
 

 |4Relying upon the American College of Cardiology/American Heart Association Task Force on Practice Guidelines for the Management of Patients With ST-Elevation Myocardial Infarction (May 2004), Dr. Juantina Johnson, an emergency room physician who is board certified in internal medicine, was of the uncontradicted expert opinion that the delay in calling for emergency medical assistance and the ensuing failure to transport Ms. Simmons by EMS “dramatically” increased the likelihood of Ms. Simmons’ death.
 

 II
 

 “A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant.”
 
 Samaha, v. Rau,
 
 07-1726, p. 3 (La.2/26/08), 977 So.2d 880, 882; La. C.C.P. art. 966. “A summary judgment is reviewed on appeal
 
 de novo,
 
 with the appellate court using the same criteria that govern the trial court’s determination of whether summary judgment is appropriate;
 
 ie.
 
 whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law.”
 
 Id.
 
 at 3-4, 977 So.2d at 882-883.
 

 A motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to material fact, and the mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966 B. “[Sjummary judgment is designed to secure the just, speedy, and inexpensive determination of every action ... [t]he procedure is favored and shall be construed to accomplish these ends.” La. C.C.P. art. 966 A(2). The legislature, in 1997, | senacted La. C.C.P. art. 966 C(2), which further clarified the burden of proof in summary judgment proceedings, providing:
 

 The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
 

 See also Id.
 
 at p. 5, 977 So.2d at 883.
 

 The Supreme Court in
 
 Somalia,
 
 further explained:
 

 This amendment, which closely parallels the language of
 
 Celotex Corp. v. Catrett,
 
 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), first places the burden of producing evidence at the hearing on the motion for summary judgment on the mover (normally the defendant), who can ordinarily meet that burden by submitting affidavits
 
 or
 
 by pointing out the lack of factual support for an essen
 
 *226
 
 tial element in the opponent’s case. At that point, the party who bears the burden of persuasion at trial (usually the plaintiff) must come forth with evidence (affidavits or discovery responses) which demonstrates he or she will be able to meet the burden at trial.... Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. (Emphasis added; citation omitted)
 

 Id.
 
 p. 5, 977 So.2d at 883
 
 (quoting Wright v. Louisiana Power & Light,
 
 06-1181 p. 16 (La.3/9/07), 951 So.2d at 1069-1070 (citations omitted)).
 
 See also Brungardt v. Summitt,
 
 08-577, pp. 6-7 (La. 4 Cir. 4/8/09), 7 So.3d 879, 884.
 

 In a workers’ compensation claim, it is the worker who would bear the burden of persuasion at the trial that she received “personal injury by accident 1 (¡arising out of and in the course of her employment”. La. R.S. 23:1031 A.
 
 See McLin v. Industrial Specialty Contractors, Inc.,
 
 02-1539, p. 3 (La.7/2/03), 851 So.2d 1135, 1139. Ordinarily, the worker’s burden of persuasion is by a preponderance of the evidence.
 
 McLin, supra; Hoy v. Gilbert,
 
 98-1565, p. 3 (La.3/2/99), 754 So.2d 207, 209. It is, however, more difficult for a worker to prove that heart-related and perivascular injuries suffered on the job are compensable, and a worker seeking benefits for an employment-related heart attack must meet a more restrictive statutory test with an elevated burden of proof.
 
 Harold v. La Belle Maison Apartments,
 
 94-0889 (La.10/17/94), 643 So.2d 752, 754-755. The statutory test is set out in La. R.S. 23:1021(8)(e)
 
 [3]
 
 which provides:
 

 A heart-related or perivascular injury, illness, or death shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence that:
 

 (i) The physical work stress was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation, and
 

 (ii) The physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of the heart-related or perivascular injury, illness, or death.
 

 This specific statutory test changes the ordinary test for personal injuries by accident arising out of and in the course of her employment, in at least three respects, as summarized in
 
 Harold, supra:
 

 First, it heightens the burden of proof the claimant must show from a preponderance of the evidence to
 
 clear and convincing evidence.
 
 Second, it changes the standard that the claimant’s physical work stress must be compared to,
 
 requiring his or her physical work stress to be extraordinary and unusual when compared to the \ ^physical work stress of the average employee in that occupation.
 
 Third, it heightens the required causal link between the work stress to be
 
 the predominant and, major cause of the heart-related or perivascu-lar injwy.
 
 (emphasis added)
 

 Based upon the undisputed medical evidence, there is no question that Ms. Sim
 
 *227
 
 mons’ death is heart-related and that this statute controls what her claimants would have to prove at a trial on the merits.
 
 See Charles v. Travelers Ins. Co.,
 
 627 So.2d 1366 (La.1993). Because the employer does not bear the burden at the trial, at the hearing on the motion for summary judgment it need only “point out to the court that there is an absence of factual support for one or more elements essential to [her] claim ...” La. C.C.P. art. 966 C(2). Our review of the summary judgment is, as a question of law,
 
 de novo. Smith v. Our Lady of the
 
 Lake Hosp., Inc., 93-2512, p. 26 (La.7/5/94), 639 So.2d 730, 750.
 

 The dispositive issue to be resolved is whether the claimants can bear their burden of proving that Ms. Simmons’ “physical work stress was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation.” La. R.S. 23:1021(8)(e)(i). In
 
 Hatcherson v. Diebold, Inc.,
 
 00-3263, p. 10 (La.5/15/01), 784 So.2d 1284, 1291, the Louisiana Supreme Court explained the requirement of physical work stress:
 

 The requirement of physical work stress means “physical work stress in the job environment.” 13 Wex S. Malone & H. Alston Johnson, Louisiana Civil Law Treatise: Louisiana Workers’ Compensation Law and Practice § 261 p. 668 (3rd ed.1994). Physical work stress ... thus requires an analysis of the job duties the plaintiff was actually performing at the time of the accident or death.
 

 | <sThe
 
 Hatcherson
 
 court found that the worker’s job did not involve manual labor and the duties were administrative in nature and, therefore, concluded that “[g]iv-en the lack of physical work stress, it would be theoretically flawed for us even to attempt to apply the two requirements of Section 1021(7)(e) ...”
 
 Hatcherson,
 
 p. 11, 784 So.2d at 1291. Because physical work stress was “lacking” or “nonexistent,” the claim was determined to be non-compensable.
 
 Hatcherson,
 
 p. 12, 784 So.2d at 1292.
 

 The undisputed facts in this case establish that Ms. Simmons’ employment responsibilities are characterized as “light duty.” Her responsibilities centered on changing labels on spice containers while seated at a table. There is no evidence of any kind to suggest that her duties were
 
 physically
 
 strenuous or stressful for her or any other worker. Although her duties, unlike the worker’s in
 
 Hatcherson,
 
 were manual and not administrative, they were, like that worker’s, sedentary. Her claimants argue, however, that the time she was in the supervisor’s office suffering the symptoms of the heart attack is sufficient to constitute such physical stress found to be compensable in
 
 Harold v. La Belle Maison Apartments.
 

 Harold
 
 is a decision in which the Supreme Court determined that a heart attack victim had established entitlement to compensation by meeting the heightened standards set out in La. R.S. 23:1021(8)(e). The worker in
 
 Harold
 
 was a maintenance worker for a 220-unit two story apartment complex. The court described her employment duties to include:
 

 ... heavy physical labor, such as moving refrigerators, stoves and ovens into and out of apartments, including those located on the second floor of the complex. Sometime other workers assisted her in moving this heavy equipment, and other times she had the assistance of only a dolly. She was also responsible for carpentry |flwork, yard work, roof repair, painting, cleaning, and making general repairs.
 

 Harold,
 
 643 So.2d at 753.
 

 
 *228
 

 Harold
 
 is distinguishable on the sole basis that the duties of the worker there, in contrast to those of Ms. Simmons, actually involved physical exertion. But, more to the point raised by the claimants, the worker in
 
 Harold
 
 was required by her employer to continue to work and physically exert herself even
 
 after
 
 she began to experience the pain from the onset of her heart attack. The critical, and distinguishing, language of
 
 Harold
 
 is:
 

 Being required to perform physical labor while in pain is not usual, regular, or customary for maintenance workers, which was Mrs. Harold’s occupation. Therefore, Harold has successfully prov- . en that her physical work stress was extraordinary and unusual in comparison to that of the average employee in that occupation. La. R.S. 23:1021(7)(e) (i).
 

 Harold,
 
 643 So.2d at 755-756. Not only was Ms. Simmons not performing physically strenuous manual labor at the time of the onset of the painful symptoms of her heart attack, but her employer never required her to continue to perform even her light duty work while she was in pain. In fact, the undisputed evidence is that Ms. Simmons’ co-workers placed her in a comfortable environment while she decided whether and how to seek emergency medical treatment. Any delay in her obtaining emergency medical treatment is indisputably
 
 not
 
 because of her employer requiring her to continue to work.
 
 Id.
 

 Based upon our
 
 de novo
 
 review, we conclude that the OWCJ was legally correct in concluding that the employer was entitled to summary judgment because the claimants would not be able at trial to carry their heightened burden of proof by clear and convincing evidence that Ms. Simmons’ heart attack was compensable under La. R.S. 23:1021(8)(e).
 

 JkjIII
 

 The claimants also raised an alternative argument for imposing liability upon the employer, suggesting that Ms. Simmons’ “lost chances of survival and ultimate death were directly caused by the inaction of the Baumer management and ‘Safety’ Committee.”
 
 [4]
 
 The claimants cite and rely upon
 
 Smith v. State, Department of Health, and Hospitals,
 
 95-0038 (La.6/25/96), 676 So.2d 543, 547, for the proposition that the loss of a chance of survival is a distinct compensable injury. We first note that
 
 Smith
 
 was self-limiting to general damages in medical malpractice cases and did “not consider damages for loss of a chance of survival in cases against other types of
 
 tortfeasors.” Id.,
 
 n. 7 (emphasis added). Of additional note and consequence, we are reminded that we are dealing here with a claim for workers’ compensation death benefits, which are specified by statute.
 
 See
 
 La. R.S. 23:1231
 
 et seq.
 
 Recovery of workers’ compensation benefits is generally a worker’s only remedy against her employer-to the exclusion of suing her employer in tort for damages.
 
 See Ramos v. Tulane Univ. of La.,
 
 06-0487, p. 3 (La.App. 4 Cir. 1/31/07), 951 So.2d 1267, 1269.
 

 While we do not question Dr. Johnson’s uncontradicted expert opinion that a delay in seeking or obtaining emergency medical treatment for a heart attack in progress would likely decrease a person’s chance of survival, we do not consider that a cause of action for workers’ compensation death benefits exists on that basis alone. Of course, by mandating that a worker continue to engage in physical labor despite the onset of heart attack symptoms
 
 and
 
 purposefully delaying the worker’s admittance to emergency treatment, an employer may
 
 *229
 
 be liable for benefits. |
 
 nHaroId,
 
 643 So.2d at 756-757. Absent the very special circumstances of
 
 Harold,
 
 we agree with the fifth circuit’s rationale that
 

 ... the question of whether [the employer] could have prevented the decedent’s death or minimized his injury is not relevant to a workers’ compensation claim, as the employer’s fault is not an issue.
 

 Cortinas v. Highway Transport, Inc.,
 
 01-725 (La.App. 5 Cir. 1/15/02), 807 So.2d 940, 944. In
 
 Cortinas
 
 it was claimed that the employer had failed to take prompt action to investigate its employee’s failure to make contact directly or through satellite equipment. The claimants attempted to classify this under the provisions of La. R.S. 23:1021(1) as an accident independent of the provisions of La. R.S. 23:1021(8)(e). The fifth circuit rejected the attempt, concluding that the § 1021(8)(e) was exclusive as the medical complications would not have been suffered but for the perivascular injury.
 
 Id.
 
 Likewise, in this case, we reject the argument and we too conclude that § 1021(8)(e) exclusively controls when there is a heart-related injury, illness or death.
 
 [5]
 
 The OWCJ was correct in dismissing the claim for death benefits.
 

 IV
 

 Accordingly, we affirm the summary judgment granted by the OWCJ and the dismissal with prejudice of the claims for workers’ compensation benefits on account of the heart-related death of Robin Simmons.
 

 AFFIRMED.
 

 [1]
 

 . The claimants are the decedent’s husband, Seymore Simmons, her adult sons, Wayne Thomas, Jr. and Justin Thomas, and her minor child, Jirus Thomas, through his natural tutor, Wayne Thomas, Sr.
 
 See
 
 La. R.S. 23:1231 and 1251
 
 etseq.
 

 [2]
 

 . For the purposes of this decision, we include in the term "employer” Baumer Foods, Inc., Task Force Staffing Services, Inc., and their respective insurers. Great American Assurance Company and Commerce and Industry Insurance Company.
 

 [3]
 

 . Prior to the 1997 amendments, Section 1021(8)(e) was designated as Section 1021(7)(e). The content of this section was unchanged, and references in some decisions to the earlier citation should be understood as referencing the current Section 1021(8)(e).
 

 [4]
 

 . Appellants' Original Brief, p. 17.
 

 [5]
 

 . Of course, this statement is subject to the language in
 
 Charles v. Travelers Ins. Co.,
 
 627 So.2d at 1371 n. 15, and
 
 Hatcherson v. Diebold, Inc.,
 
 00-3263, p. 11 n. 9, 784 So.2d at 1291.