55 So.3d 789 (2010)
Seymore SIMMONS, Individually and on Behalf of His Deceased Wife, Robin Simmons, Wayne Thomas, Jr., Individually and on Behalf of His Deceased Mother, Robin Simmons, Justin Thomas Individually and on Behalf of his Deceased Mother, Robin Simmons And Wayne Thomas, Sr., Natural Tutor, on Behalf of his Minor Child Jirus Thomas, Individually and on Behalf of his Deceased Mother, Robin Simmons
v.
BAUMER FOODS, INC., Task Force Staffing Services, Inc., Zurich Insurance Company, and National Union Fire-Pittsburgh Insurance Company.
No. 2009-CA-1739.
Court of Appeal of Louisiana, Fourth Circuit.
October 6, 2010.
Writ Denied January 14, 2010.
*790 Ron A. Austin, Margaret "Maggie" Madere, Austin & Associates, L.L.C., Harvey, LA, for Plaintiffs/Appellants.
Robert J. David, Jr., Sue Nations, Juneau David, APLC, Lafayette, LA, for National Union Fire Insurance Company of Pittsburgh, PA.
Charles M. Lanier, Oscar M. Gwin IV, Christovich & Kearney, LLP, New Orleans, LA, for Task Force Staffing Services, Inc.
Thomas L. Gaudry, Jr., Michael D. Peytavin, Gaudry Ranson Higgins & Gremillion, L.L.C., Gretna, LA, for American Zurich Insurance Company.
Robert I. Siegel, Margaret L. Sunkel, Emily E. Eagan, Gieger Laborde & Laperouse, LLC, New Orleans, LA, for Baumer Foods, Inc.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge JAMES F. McKAY, III, Judge DENNIS R. BAGNERIS, SR., Judge MAX N. TOBIAS, JR., Judge EDWIN A. LOMBARD).
EDWIN A. LOMBARD, Judge.
This appeal is from a judgment granting the exception of res judicata, filed on behalf of defendants American Zurich Insurance Company (American Zurich), National Union Fire Insurance Company (National Union), Task Force Staffing Services, Inc. (Task Force), and Baumer Foods, Inc. (Baumer). After review of the record in light of the applicable law and arguments of the parties, we affirm in part and reverse in part and remand the matter back to the trial court.

Relevant Facts and Procedural History
The decedent, Robin Simmons, died of a heart attack in May 2005. Specifically, on May 4, 2005, Ms. Simmons, working the afternoon shift at the Baumer plant, began having chest pains and sweating profusely. Ricardo Vasquez, the shift supervisor, took her to the plant manager's office. After a series of phone calls to Task Force, it was determined that neither Task Force nor Baumer Foods would assume responsibility for expenses if an ambulance was called. Accordingly, Ms. Simmons was moved to a different office while Mr. Vasquez returned to his duties as shift supervisor. Eventually, Mr. Vasquez returned to Ms. Simmons, put her in his car, transported her to Charity Hospital, placed her in a wheelchair in the ambulance bay and returned to the Baumer plant. Ms. Simmons died in the Charity Hospital waiting area at 6:06 p.m. before her husband, Seymore Simmons, who was also employed at the Baumer plant and only notified of his wife's illness as she was being transported to the hospital, could reach her on his bicycle.
On July 15, 2005, Ms. Simmons' heirs filed suit against Ricardo Vasquez, Baumer, and its insurer, American Zurich, alleging that the defendants were negligent *791 in failing to properly train, educate, and instruct its employees on methods in assisting someone who is ill, failing to monitor and oversee the actions and practices of its employees, failing to call 911 and/or emergency medical personnel to assist an ill person on its premises, failing to have trained emergency medical personnel available for treatment of those who become ill on its premises, permitting an employee to drive someone to the hospital, and other acts and omissions falling below the applicable standards of care. In their petition, the plaintiffs alleged that Ms. Simmons was an employee of Task Force assigned to Baumer as an independent contractor.
On motion for summary judgment, Baumer argued that the decedent was a borrowed employee pursuant to the Louisiana workers' compensation scheme and not, as alleged in the plaintiffs' petition, an independent contractor. The trial court denied the motion, but pursuant to Baumer's application for supervisory writ, this court determined on September 6, 2007, that the plaintiff was a borrowed employee and not an independent contractor and, accordingly, granted writ and reversed the judgment of the trial court. The Louisiana Supreme Court denied the plaintiffs' application for writs of review. Simmons v. Baumer Foods, 2007-1987 (La.12/7/07), 969 So.2d 618.
Shortly thereafter, American Zurich filed a Motion for Summary Judgment, arguing that it was entitled to summary judgment because the decedent was a Baumer employee and its CGL policy excluded coverage for employees whose bodily injury arose out of and in the course of employment or while performing duties related to the conduct of Baumer's business or for any obligations incurred by its insured under workers' compensation, disability or similar laws. Baumer, Task Force, and National Union[1] filed separate Exceptions of No Cause of Action alleging that the plaintiffs' claims were barred by the exclusivity provisions of the Louisiana Workers' Compensation Act. On March 6, 2008, the trial judge issued a judgment sustaining the exceptions and granting the motion for summary judgment.[2]
On April 4, 2008, rather than appealing the trial court judgment of March 6, 2008, the plaintiffs filed a workers' compensation claim. Baumer, Task Force, and their respective workers' compensation insurers quickly moved for summary judgment, arguing that the decedent's heart attack was a pre-existing heart-related injury and, thus, not an injury producing accident *792 that occurred within the scope and course of employment pursuant to La.Rev.Stat. 23:1021 and La.Rev.Stat. 23:1031. Finding that although the decedent was an employee the plaintiffs' action did not fall within the scope of the Workers' Compensation Act, the workers' compensation judge granted summary judgment.[3] On August 13, 2009, the plaintiffs refiled their tort action. Each of the defendants, Baumer, Task Force, National Union, and American Zurich, filed exceptions of res judicata, arguing that the plaintiffs' claims were previously litigated to a final judgment on the merits. The trial court granted the exceptions of res judicata and dismissed the plaintiffs' claims with prejudice on November 12, 2009 and this timely appeal followed.

Standard of Review
The standard of review of a peremptory exception of res judicata requires an appellate court to determine if the trial court's decision is legally correct or incorrect. Ins. Co. of North America v. Louisiana Power & Light, 2008-1315, p. 5 (La. App. 4 Cir. 3/4/09), 10 So.3d 264, 267; Sutter v. Dane Investments, Inc. 07-1268, p. 3 (La.App. 4 Cir. 6/04/08), 985 So.2d 1263, 1265. Louisiana courts recognize that "a final judgment has the authority of res judicata only as to those issues presented in the pleading and conclusively adjudicated by the court." Ins. Co. of North America, 2008-1315 at 6, 10 So.3d at 268. Moreover, the doctrine of res judicata is stricti juris and, accordingly, any doubt concerning the applicability of the principle must be resolved against its application. Id. at 7; Kelty v. Brumfield, 93-1142, p. 7 (La.2/25/94), 633 So.2d 1210, 1215.
Notably, there is statutory recognition that application of the doctrine of res judicata in all circumstances would be unfair. Specifically, La.Rev.Stat. 13:4232(A)(1) provides that a judgment does not bar another action by the plaintiff "[w]hen exceptional circumstances justify relief from the res judicata effect of the judgment." Moreover, the comments accompanying La.Rev.Stat. 13:4232 make clear that his court has the authority under the statute to exercise its equitable discretion to balance the principle of res judicata with the interests of justice, although clearly "this discretion must be exercised on a case by case basis and such relief should be granted only in truly exceptional cases...."

Assignment of Error
The plaintiffs argue on appeal that the trial court erred in finding that their claims were barred by res judicata because they pursued a tort claim until instructed by the court that their claim resounded under the Workers' Compensation Act and then pursued their claim in that venue until it was conclusively determined that their claim does not resound under the Workers' Compensation Act. Accordingly, the plaintiffs assert that to dismiss their claims under these circumstances without ever allowing them the opportunity to litigate the negligence issues constitutes a travesty of justice. In response, the defendants argue that dismissal is appropriate because it was legally determined that the plaintiffs' exclusive remedy falls under the Workers' Compensation Act but that their claims do not merit recovery under the Act.

Discussion
Under the workers' compensation scheme, an employer is responsible *793 for compensation benefits to an employee who "receives personal injury by accident arising out of [the employment] and in the course of his employment. La.Rev.Stat. 23:1031(A). Notably, the Legislature has the authority to limit remedies, as with workers' compensation, but it can never completely deprive citizens of the right to seek a remedy either under the Workers' Compensation Act or under our general law. O'Regan v. Preferred Enterprises, Inc., 98-1602, p. 14 (La.3/17/00), 758 So.2d 124, 134; see also La. Const. art. I, § 22 ("every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to his person, property, reputation, or other rights.") Thus, workers' compensation benefits are available when "an employee not otherwise eliminated from the benefits of this Chapter receives personal injury arising out of an in the course of [her] employment, La. Rev.Stat. 23:1031(A), and it is "[o]nly in such instances are workers' compensation benefits the employee's exclusive remedy against his employer." O'Regan, 98-1602, p. 10, 758 So.2d at 131-132 (emphasis added). Accordingly, "[w]hen an employee fails to demonstrate that the injury arose out of and occurred in the course of employment the Act has no applicability and he may proceed in tort." O'Regan, XXXX-XXXXX at P. 13, 758 So.2d at 133 (citation omitted).
Heart-related disease is specifically excluded from inclusion in the classification of occupational diseases, La.Rev.Stat. 23:1031.1(A), and can only be categorized as the requisite personal injury by accident arising out of employment when the plaintiff demonstrates by clear and convincing evidence that the physical work was extraordinary and unusual and that it was the physical work stress or exertion, not a pre-existing condition, that was the predominant and major cause of the heart-related injury or death. La.Rev.Stat. 23:1021(7)(e). By imposing a high burden of proof and identifying heart-disease as a risk which falls outside the occupational disease protection of the Workers' Compensation Act, the Legislature has clearly created a category of employees who are "otherwise eliminated from the benefits of this Chapter," La.Rev.Stat. 23:1031(A). Thus, the Workers' Compensation Act does not provide exclusive coverage for an employee, nor does it protect an employer from all liability in any action taken with regard to an employee:
The Act does not and cannot foreclose all types of civil actions between employers and employees. Rather the exclusivity provisions of the Act preclude only those civil tort actions premised upon the fault of the employer vis-a-vis the employee for workplace injuries compensable under the Act. A compensable injury under the Act is one contracted in the course of and arising out of the employment and for which the injured employee is entitled to receive compensation. LA. REV.STAT. 23:1031.(D).
O'Regan, 98-1602 at p. 14-15, 758 So.2d at 134. In other words, the Act was not intended to give the employer a windfall and relieve him of all responsibility towards injured employees. O'Regan, 98-1602 at 18, 758 So.2d at 18 (it is a fundamental principle that the employee must have the possibility of recovery under the Act for the scope of immunity from tort liability granted by the exclusivity provisions to be operative).
The circumstances of this case are clearly exceptional. It has been judicially determined that the decedent was a borrowed employee but that her claims do not fall under the Workers' Compensation Act. The plaintiffs initially filed a tort action in civil district court but were diverted into the workers' compensation system. Now that it has been decisively determined that *794 decedent was an employee and that the plaintiffs' claims do not fall under the Workers' Compensation Act, the defendants argue that the doctrine of res judicata should be applied to deny the plaintiffs their day in court. Notably, the plaintiffs have vigorously pursued their claims but the substance of their tort claims and the issue of whether those claims fall beyond the scope of the Workers' Compensation Act have yet to be addressed. Rather, their pursuit of justice has been derailed by the procedural determinations as to whether their action should be heard in civil district court or workers' compensation court. Accordingly, now that it has been definitively determined that the plaintiffs' action is properly brought in civil district court, it would be unjust to bar them from an opportunity to litigate the substantive issues. Under the exceptional circumstance of this case, we find that relief from the res judicata effect of the prior judgments sustaining the Exceptions of No Cause of Action filed by Baumer, Task Force, and National Union (alleging that the plaintiffs' claims were barred by the exclusivity provisions of the Louisiana Workers' Compensation Act) is justified. With regard to the plaintiffs' claims against American Zurich, there appears to be no dispute that the plaintiffs' claims against Baumer do not fall within the terms of American Zurich's CGL policy with Baumer and, accordingly, we affirm the summary judgment rendered in favor of American Zurich.

Conclusion
The judgment of the trial court is reversed in part and affirmed in part and the matter is remanded for further proceedings.
REVERSED IN PART; AFFIRMED IN PART; REMANDED.
MURRAY, J., Concurs In Part With Reasons.
MURRAY, J., Concurs In Part With Reasons.
As the majority finds, the exception to res judicata codified in La. R.S. 13:4232(A) must be applicable to this case, which is exceptional both procedurally and substantively.
Substantively, the civil remedy the plaintiffs are seeking to pursue is a unique one. Indeed, a commentator has labeled the remedy as a "comptort"the remedy available for injuries arising out of a workplace setting that are not covered by the Workers' Compensation Act because of either legislative or judicial narrowing of the compensation remedy. H. Alston Johnson, Developments in the Law 1993-1994: A Faculty Symposium, Workers' Compensation, 55 La. L.Rev. 665, 675, n. 63 (1995); see also Thomas C. Galligan, Jr., A Primer on the Patterns of Louisiana Workplace Torts, 55 La. L.Rev. 71, 93, n. 83 (1994). In this case, the narrowing that gave rise to the comptort the plaintiffs seek to pursue was the Legislature's enactment of an elevated burden of proof for heart-related or perivascular injuries. La. R.S. 23:1021(8)(e). Alluding to the existence of a comptort in this setting, the Louisiana Supreme Court in Charles v. Travelers Ins. Co., 627 So.2d 1366, 1372, n. 17 (La. 1993), commented that the Legislature's action in increasing the plaintiffs' burden of proving a compensation claim for heart attacks and strokes "may have the result, albeit unintended, of exposing some employers, in those cases where the plaintiff can prove the elements of his claim, to the more financially harsh tort liability for those heart attacks and strokes now excluded from compensation coverage." Id.
In O'Regan v. Preferred Enterprises, Inc., 98-1602 (La.3/17/00), 758 So.2d 124, the Supreme Court addressed a similar *795 issue. In that case, the plaintiff was a laundry worker who contracted an occupational disease. Because the plaintiff was employed for only four months (less than twelve months), she was statutorily presumed to have a nonoccupational disease and subject to a higher burden of proof. La. R.S. 23:1031.1(D). Relying solely on the presumption that a short-term employee's disease is nonoccupational, the majority found the plaintiff was entitled to pursue a tort claim. The majority opinion in O'Regan, as Baumer Foods points out in its brief, expressly declined to address the issue noted in footnote 17 in Charles, supra., and distinguished a presumption that eliminates certain employees from workers' compensation benefits, La. R.S. 23:1031.1(D), from a statutory provision that imposes a higher burden of proof, such as La. R.S. 23:1021(8)(e). In contrast, the concurring opinion in O'Regan, by former Justice Lemmon, focused on the Legislature's imposition of a heightened burden of proof as the basis for finding the laundry worker had a tort claim; Justice Lemmon explained:
The thing that makes this case different is the higher burden of proof (especially when combined with the presumption of non-causation). An employee who can prove employment-rooted causation of a covered occupational disease by a preponderance of the evidence, but cannot prove that causation by clear and convincing evidence (the interpretation of "an overwhelming preponderance of the evidence" by the court of appeal in this case), has been denied a remedy under the Act because the Legislature has eliminated that employee's compensation remedy by raising the burden of proof. Such an employee therefore is entitled to a remedy in tort.
O'Regan, 758 So.2d at 141 (Lemmon, J., concurring). He thus concluded that "[s]ince the Legislature never gave this employee a chance to prove causation by a simple preponderance of the evidence, she has been denied a remedy under the Workers' Compensation Act, and the tort remedy is therefore available to her if she can prove causation (and negligence) by a preponderance of the evidence." Id.
By analogy, the plaintiffs in this case do not have a compensation claim against Baumer Foods and Task Force because they cannot satisfy the heightened burden of proof by clear and convincing evidence that Mrs. Simmons' heart attack was compensable under La. R.S. 23:1021(8)(e). Because the Legislature has eliminated the plaintiffs' compensation remedy by raising the burden of proof, they are entitled to a remedy in tort.
Procedurally, until the WCJ found the plaintiffs could not satisfy the heightened burden of proof for a compensation claim, they were barred by the workers' compensation exclusivity rule from pursuing a tort claim. Due to the limited jurisdiction of the respective forums (CDC and OWC), the plaintiffs were precluded from cumulating their tort and workers' compensation claims. See O'Regan, 758 So.2d at 141 n. 4 (Lemmon, J., concurring)(observing that "[u]nder the present jurisdiction rules, these [tort and workers' compensation benefits] demands could not be cumulated in the present action.") The plaintiffs were required to bring each claim in a different forum. Although the plaintiffs have done so, they have had their claim dismissed in both forums. Neither forum reached the merits of the plaintiffs' claim that the employer was negligent in failing to administer first aid and failing to call for emergency help. The plaintiffs thus have not had the opportunity to litigate their claim in any forum.
NOTES
[1] Task Force and their insurer, National Union, were added as defendants by supplemental and amending petition in January 2007. Task Force filed a Peremptory Exception of No Cause of Action, alleging that the plaintiffs' claims were barred by the exclusivity provisions of the Louisiana Workers' Compensation Act. The trial judge granted the exception, but allowed the plaintiffs the opportunity to amend their suit to cure the objection raised by Task Force's exception. Shortly thereafter, on May 29, 2007, the plaintiffs filed an amending and supplemental petition adding claims for a cause of action under La.Rev.Stat. 23:13 for failing to call 911 and a cause of action for failing to follow company policies and procedures.
[2] Notably, this ruling was made after this court reversed the trial court, finding that the decedent was a "borrowed employee" and stating in dicta that the plaintiffs' exclusive remedy was under the Workers' Compensation Act. Clearly, to the extent that the defendants have construed this court's determination that the decedent was a borrowed employee to suggest that employers are entitled to a windfall if someone in their employ is injured by negligent actions that do not fall within the scope of workers' compensation coverage, such construction is clear error. See O'Regan, infra.
[3] The judgment of the workers' compensation court was subsequently affirmed by this court. Simmons v. Task Force Staffing Services, Inc./Baumer Foods, Inc. 2009-1384 (La.App. 4 Cir. 1/13/10), 30 So.3d 223.